(No. 26857.—

ELSIE McGOOKEY, Appellant, *vs.* CARRIE WINTER, Exrx., *et al.,* Appellees.

*Opinion filed January 19, 1943.*

Seal & Seal, and A. J. McMahan, for appellant.

Donovan D. McCarty, for appellee Carrie Winter, Executrix.

R. S. Rowland, for other appellees.

Mr. Justice Murphy delivered the opinion of the court:

This appeal is prosecuted from parts of a decree entered in the circuit court of Richland county. The part appealed from refers to the various rights and interests the parties to this litigation claim in a tract of land described as fifty feet off the north side of Lot 54 in John Elliott's Second Addition to the city of Olney which was valued at about $2000. The number of questions presented demands a full statement of the facts showing the relationship of the parties and how their respective interests in the lot were acquired.

The lot was owned by Charles Foster, who died intestate in 1918. He left surviving his widow, Elizabeth, Albert, a son, and his daughters, Edith Hasslinger, Margaret Hartman, Elsie McGookey and Cora Jones, his only heirs-at-law. The children conveyed all their interests in the lot to the widow. In the deed of transfer, the property

was located in William Elliott's Second Addition instead of John Elliott's Second Addition. The widow occupied the premises as a home and later married Gustav Yonaka. They maintained their residence on the lot from the date of their marriage until February 25, 1935. They were having marital difficulties and on the latter date, they entered into a property-settlement agreement after which they separated and never lived together again. They were divorced in 1936. As a part of the settlement agreement, both Yonakas signed a warranty deed conveying the lot to "Glenn E. Hasslinger, Trustee for the use and benefit of Elizabeth Yonaka." The deed and certificate of acknowledgment released all homestead rights. The deed was filed for record on the day of its execution.

About nine months thereafter, November 18, 1935, the two Yonakas joined in a warranty deed conveying the lot to the plaintiff herein, Elsie McGookey. Neither the deed nor certificate of acknowledgment provided for any release of homestead rights. The plaintiff, Elsie McGookey, claims title to the lot by virtue of this deed. Elizabeth Yonaka died in February, 1938, leaving a will dated April 14, 1937, in which she devised and bequeathed all her property, both real and personal, to the five children above named. The will named Carrie Winter executrix and empowered her to sell the real estate and make an equal division of the proceeds to the children, less an advancement of $260 made to Mrs. McGookey. The will was admitted to probate and letters testamentary issued to Carrie Winter, defendant-appellee and counterclaimant.

In August, 1940, Elsie McGookey started this suit asking for a reformation of the description of the lot in the deed from the Foster heirs to the widow. It was also alleged that the deed of R. L. Robards and wife, conveying the property to Charles Foster in 1905, contained the same error in description as the deed of the Foster heirs to their mother and that on October 10, 1939, two of the heirs,

namely: Edith Hasslinger and Cora Jones, acquired a deed from the Robards conveying the lot to them. The deed of the Yonakas to Glenn Hasslinger, trustee, was also pleaded. It was charged that a certain provision in the deed of the Yonakas dated November 18, 1935, to the plaintiff constituted a revocation of the Hasslinger trust deed. It was pleaded that after plaintiff received her deed from the Yonakas she went into possession of the property through her agent and collected rents therefrom until February, 1937, and that subsequent thereto Glenn E. Hasslinger had collected the rents and had not accounted to plaintiff for the same. The prayer was that the two deeds containing the erroneous description be reformed by striking the word "William" and inserting the word "John" immediately preceding "Elliott's Second Addition;" that the deed given by the Robards to Edith Hasslinger and Cora Jones be declared null and void; that the trust created by the deed of the Yonakas to Glenn Hasslinger of February 25, 1935, be declared to have been revoked and canceled; that the executrix of the Yonaka will be enjoined from selling said lot or exercising any supervision over it and that she be required to account for the rents received by her, and that the plaintiff be declared to have a fee simple title to said lot.

Carrie Winter, as executrix, filed an answer and counterclaim. She admitted the execution of the various deeds and the errors in the early description, but denied that plaintiff held a fee simple title to the lot and that she had ever entered into possession of said lot through her agent or otherwise. In her counterclaim she charged that the purpose of the trust deed to Glenn Hasslinger was to make provision for Elizabeth Yonaka and that "the said Glenn Hasslinger was charged with the duty during the lifetime of said Elizabeth Yonaka of collecting the rents, issues and profits therefrom, applying the same toward the payment of the taxes and maintenance of the said Elizabeth

Yonaka;" that upon the death of Elizabeth Yonaka the object and purposes of the trust came to an end and that counterclaimant as executrix became vested with the legal and equitable title to the lot. She also charged that Elsie McGookey obtained the signature of Elizabeth Yonaka to her deed, dated November 18, 1935, through fraud and circumvention, that the premises constituted the homestead of Elizabeth Yonaka, and that the deed, even though valid, did not release her homestead rights. It was also alleged that on May 12, 1937, after Elizabeth Yonaka had learned that Elsie McGookey had practiced fraud and circumvention to obtain her signature to the deed, she filed a suit in the circuit court praying that her deed to McGookey be canceled and set aside and that after the suit was filed, but before an answer was filed, plaintiff fraudulently represented to Elizabeth Yonaka that if she would dismiss the suit she, Elsie McGookey, would reconvey the lot to Elizabeth Yonaka, that Mrs. Yonaka, relying on said false and fraudulent representations, authorized the dismissal of the suit but that plaintiff refused to reconvey the premises to Elizabeth Yonaka. The counterclaim prayed for a reformation of the two deeds containing the erroneous descriptions; that Glenn Hasslinger, trustee, be required to convey to counterclaimant; that the deed from Elizabeth Yonaka and husband to Elsie McGookey, dated November 18, 1935, be set aside; that the executrix be decreed to have full power and authority to sell the lot at public or private sale.

The defendants Edith Hasslinger and husband, Cora Jones and husband, Glenn E. Hasslinger individually, and Glenn E. Hasslinger as trustee, also filed an answer and counterclaim to plaintiff's complaint which, as to facts pleaded and relief asked, was the same as the answer and counterclaim of Carrie Winter, executrix. Plaintiff was the sole defendant to each counterclaim and she filed replies joining issue. The other heirs-at-law were defaulted.

After a hearing of evidence before the court, the chancellor found: (a) that the deeds containing the erroneous description of the addition in which the lot was located should be reformed; (b) that any title that Edith Hasslinger and Cora Jones acquired from the Robards did, by virtue of their warranty deed to Elizabeth Foster, later Yonaka, inure to the benefit of the devisees named in her will; (c) that Glenn Hasslinger, trustee, entered into possession of the lot pursuant to the terms and conditions of his trust, managed and controlled the same for the use and benefit of Elizabeth Yonaka; that said trust continued until her death when the legal and equitable title vested in the executrix of her will; (d) that Elizabeth Yonaka was, on November 18, 1935, living temporarily in the home of plaintiff and that plaintiff induced her to execute the deed referred to conveying the property to plaintiff; that the deed was without consideration; was not executed and acknowledged in form required to waive dower and homestead rights and that the title to said lot at the time of the delivery of the deed was in Hasslinger, trustee, and that plaintiff's deed should be set aside; (e) that plaintiff had procured the dismissal of the suit instituted by Elizabeth Yonaka against her for the purpose of setting aside said deed on the false and fraudulent representation that if plaintiff's suit was dismissed the lot would be reconveyed to Elizabeth Yonaka.

Plaintiff appealed from that part of the decree (a) which dismissed her complaint for want of equity; (b) which directed Hasslinger, trustee, to convey the lot to the executrix, and (c) that canceled the deed of Elizabeth Yonaka and husband to her, dated November 18, 1935. Elsie McGookey will be referred to as plaintiff and all counter-claimants-appellees as defendants.

The parts of the evidence necessary to be considered in connection with the various contentions will be referred

to in the discussion of each question. The rights claimed under the two counterclaims rest upon the same evidence and principles of law and will be considered together. The first matter is in reference to the right of counterclaimants to have the deed of Elizabeth Yonaka and husband to plaintiff set aside. Defendants' counterclaims charged that Elizabeth Yonaka was temporarily living in the home of plaintiff and that plaintiff by means of fraud and misrepresentation induced the mother to execute the deed. Without considering the sufficiency of the allegations to sustain a charge of fraud in the procurement of a deed, it may be said that defendants offered no evidence showing the circumstances surrounding the execution of the deed. It is not shown where it was signed, who was present or that plaintiff had any connection whatsoever with its execution.

Defendants charge that Mrs. Yonaka dismissed her suit against plaintiff for cancellation of the deed on plaintiff's promise that she would reconvey the lot. The record discloses that the evidence which defendants claim established such fact occurred months after the deed was executed. Furthermore, it is nothing more than a breach of promise to reconvey the lot if the suit was dismissed. The evidence upon which defendants rest their contention in this regard is not sufficient to show plaintiff breached any contract that she had with Mrs. Yonaka.

S. C. Lewis, an attorney, testified that he represented Mrs. Yonaka and instituted the suit for her against the plaintiff, that after the suit was filed and before any answer was made, Mrs. Yonaka sent to the clerk of the court a written request that the suit be dismissed. It is evident that Lewis had no word from his client in regard to her wish to have the suit dismissed and when his attention was called to the request, he asked the court to withhold action until he could contact his client. He states that immediately thereafter he had a conversation with plaintiff and her

attorney in which plaintiff said that if the suit Mrs. Yonaka had filed against her was dismissed she, Elsie McGookey, would reconvey the lot and that, relying upon such promise, he (Lewis) asked the court to recognize the request and dismiss the suit. From this testimony it is obvious that he did not consult Mrs. Yonaka about the matter, and since the court acted upon her request, it is not apparent how plaintiff's promise to reconvey, made to Lewis, led Mrs. Yonaka to dismiss the suit. Plaintiff denied that she had any such conversation with attorney Lewis.

Defendants' claim that the title to the lot was in Hasslinger, trustee, when plaintiff's deed was made and delivered to her, requires a consideration of the effect of the deed to the trustee. Plaintiff contends it created a mere naked trust, that the trustee had no duties to perform in connection with the trust property and that by operation of section 3 (Ill. Rev. Stat. 1941, chap. 30, par. 3,) the title, both legal and equitable, passed through the trustee to Mrs. Yonaka as the beneficiary of the trust. Defendants contend that Glenn Hasslinger had certain duties to perform in reference to the trust property and that, therefore, it was an active trust.

The deed to the trustee conveyed and warranted to "Glenn E. Hasslinger, trustee, for the use and benefit of Elizabeth Yonaka." It gave no directions to the trustee nor imposed any duties upon him in reference to the property. The conveyance to him was evidently for the sole purpose of carrying the title during the property settlement that Mrs. Yonaka was then making with her husband.

In *Meecham* v. *Steele,* 93 Ill. 135, it was said: "Where the estate is conveyed to one person simply for the use of another, or to the intent that the latter shall have the rents, issues and profits thereof, the conveyance creates a use which the statute does execute, for in such cases the trustee has no duty to perform with respect to the estate conveyed." Also see *Moll* v. *Gardner,* 214 Ill. 248; *Kel-*

*logg* v. *Hale,* 108 id. 164; *Witham* v. *Brooner,* 63 id. 344; *Hubbard* v. *Buddemeier,* 328 id. 76. In such cases the trustee only receives the quantum and quality of the estate needed by him to effectuate the trust. (*Bergman* v. *Arnhold,* 242 Ill. 218.) The duties of the trustee in reference to the trust property are limited to those prescribed in the instrument creating the trust. · Defendants contend that it appears from the evidence that certain duties were prescribed which were not mentioned in the deed. Without determining whether such evidence would be admissible, it is sufficient to say that the evidence defendants rely upon does not show that at the time of creating the trust the trustee was given duties to perform in reference to the trust estate. The trustee could not at some later date perform duties in reference to the property and then contend the performance of such duties was evidence of the duties imposed upon him by the donor at the time of creating the trust.

Under the principles announced in the case cited, the trust created by the deed was passive and subject to the application of section 3 of the Conveyance Act. The legal estate never vested in Glenn Hasslinger but by operation of the statute was instantly transferred to the *cestui que trust* as soon as the use was declared. (*Kellogg* v. *Hale, supra.*) As was said in *McNair* v. *Montague,* 260 Ill. 465, the person named as trustee was "a mere conduit, through which the title passes directly to the usee." The fact that the usee in this case was the settlor of the trust does not prevent the application of the statute. The legal and equitable title to the lot were both vested in Elizabeth Yonaka at the time she executed the deed to plaintiff.

Under the views expressed in reference to the effect of the deed to the trustee, it is not necessary to consider plaintiff's argument that a provision contained in her deed of November 18, 1935, constituted a revocation of the trust by Elizabeth Yonaka.

Defendants' further contention is that plaintiff's deed did not release the homestead rights of Elizabeth Yonaka. If she had a homestead estate in the lot, it is true that the deed to plaintiff was not sufficient to release it. In *Rock Island Bank and Trust Co.* v. *Lamont,* 361 Ill. 432, it was said that three conditions must exist under the Homestead Exemption Act (Ill. Rev. Stat. 1941, chap. 52, par. 1,) in order that a homestead estate be created: "(1) The claimant must be a householder; (2) he must have a family; and (3) the premises must be occupied as a residence. If any of these requisites is wanting the law will not create an estate of homestead." *Holnback* v. *Wilson,* 159 Ill. 148; *Logue* v. *Von Almen,* 379 id. 208.

The evidence is undisputed that Elizabeth Yonaka and her husband separated February 25, 1935, and never lived together thereafter. There is no evidence that anyone resided with Mrs. Yonaka or that there was any person who was dependent upon her. In determining whether one who claims a homestead exemption was the head of a family, importance is attached to the question of dependency. In the *Lamont case, supra,* it was said: "A family within the meaning of the Homestead Act is not alone a collection of persons living together, but there must be an obligation, either legal or moral, upon someone who thus occupies the position of head of the house to support the others or some of them, and on the part of such others a corresponding state of dependence. (*Holnback* v. *Wilson, supra.*) A family, such as contemplated by the Homestead Act, consists of the householder and members of a household who are dependent upon the householder for support or to whom the householder owes some duty of support."

Defendants rely upon *Kenley* v. *Hudelson,* 99 Ill. 493, and *Maher* v. *Goff,* 316 id. 605, as holding that where the husband who is the head of the family, separates from the wife, the homestead rights continue in the wife, who succeeds him as the head of the family. In each of those cases

there were children in the family and the element of dependency was present. They are not in point here. Mrs. Yonaka was not, at the time of the execution of plaintiff's deed, the head of a family within the meaning of the Homestead Exemption Act and the deed was in sufficient form to pass all the title she had in the premises.

The final question pertains to plaintiff's right to have any relief on the case presented by her. Defendants contend her action was a suit to quiet title and that before relief could be awarded it was essential that she aver and prove that she was in possession of the lot when the suit was filed in August, 1940. Her complaint contained such an allegation but the evidence fails to show that she had been in possession, by tenant or otherwise, at any time subsequent to November 1, 1937.

It is well established that in chancery actions where the primary purpose of the litigation is to quiet the title in the plaintiff, there must be allegation and proof that such plaintiff was in possession when the suit was started, unless it be averred and proved that the premises were vacant or unoccupied. (*First National Bank* v. *Gordon,* 371 Ill. 424; *Glos* v. *Kemp,* 192 id. 72.) Another well-recognized principle is that if the main purpose of the litigation is to obtain relief other than settling the title in the plaintiff and the quieting of the title is secondary thereto, then it is not necssary to aver and prove possession in the plaintiff or that the premises are vacant and unoccupied. *Chicago Medical School* v. *Wilson,* 341 Ill. 170; *Ward* v. *Clendenning,* 245 id. 206.

The requirement in reference to proof of possession finds its origin in the principles of the common law in that an action of ejectment would lie only against the party in possession of the premises. In cases where fraud was charged or other equitable principle to be applied, courts of equity assumed jurisdiction and it was extended to include cases where the holder of the cloud on the title was

not in possession of the premises and which could not be reached by an action of ejectment. The scope of equitable jurisdiction was limited, however, to those cases where the one who wished the title settled in him was in possession of the property and as an element of his right to relief he was required to aver and prove his possession. The statute added an exception by withdrawing the requirement as to vacant and unoccupied lands, and such has been the law of this State for many years. *Gage* v. *Abbott,* 99 Ill. 366; *Hardin* v. *Jones,* 86 id. 313; *Lundy* v. *Lundy,* 131 id. 138.

Plaintiff's action amounts to a proceeding to quiet the title in her. She wishes to have the fee-simple title declared vested in her that she may have possession of the premises. The tenant of the executrix is in possession and the title or interest claimed by the executrix depends for its validity upon the effect to be given the deed to Hasslinger, trustee. We have already discussed the effect of that deed and held that the operation of the statute upon the use created by the deed passed the legal and equitable title without intervention of time to the *cestui que trust,* Mrs. Yonaka. The legal and equitable title being both revested in Mrs. Yonaka, she was seized of them when she executed the deed to plaintiff and had full right to convey without the intervention of the trustee. (*Witham* v. *Brooner, supra.*) In an action of ejectment plaintiff would have been privileged to introduce the deed in evidence. (*Witham* v. *Brooner, supra.*) From these deductions it follows that plaintiff had an edequate remedy at law. Since she was not in possession of the premises, it was incumbent upon her to bring her case within the exception such as a charge and proof of fraud or other equitable claims. This she did not do and therefore all relief will have to be denied her in this action. However, it is without prejudice to her right to maintain an ejectment action.

The circuit court dismissed plaintiff's complaint for want of equity. The judgment was correct but the find-

528

ings upon which it was based cannot be sustained. However, that is immaterial for it is the result obtained and not the reasoning that leads to it that controls. For the reasons assigned, the decree is reversed as to all relief granted upon the counterclaims of the defendants and the cause is remanded with directions to dismiss the counterclaims for want of equity. That part of the decree which dismissed plaintiff's complaint for want of equity is affirmed.

The contentions made and the conclusions we have reached demand that there be an equitable division of the costs of this appeal. It is therefore ordered that the plaintiff pay one half the costs on this appeal and that defendants pay the remaining half.

*Affirmed in part, and reversed in part and remanded, with directions.*