(No. 30719.—)
MACK BRYANT, Appellee, *vs.* LAKESIDE GALLERIES, INC.,
*et al.*—(MYRTLE WALL, Appellant.)

*Opinion filed January 19, 1949—Rehearing denied March 15, 1949.*

EDWARD M. PLATT, and DAVID H. FELDMAN, both of Chicago, for appellant.

COBURN & HERZON, (LOUIS T. HERZON, of counsel,) both of Chicago, for appellee.

Mr. JUSTICE DAILY delivered the opinion of the court:

Appellee, Mack Bryant, filed a complaint in the circuit court of Cook County wherein he prayed for specific performance of an option to purchase, for an injunction, and for the removal of certain clouds on the title of the real estate being litigated for. The defendants named were all persons appearing of record to claim some right, title or interest in the premises. Among them was Myrtle Wall, the sole appellant here. The master found the issues for appellee; the trial court approved the report of the master and entered a decree favorable to appellee. Because a freehold is involved the appeal has been brought directly to this court.

On June 9, 1944, Lakeside Galleries, Inc., was the owner of two adjoining parcels of real estate located in the city of Chicago. The premises had been improved with two structures, one designed for an art gallery or museum, and the other with a two-story residential structure. It is agreed that on the above date neither building was being used or inhabited; that both were in great disrepair and had been stripped of most movable parts and fixtures. Delinquent taxes approximating $25,000 had accumulated against the property. Appellee on June 9, 1944, entered into a lease embracing both parcels, for a term of five years commencing July 1, 1944. By terms of a rider attached to the lease, appellee was given an option to purchase at any time during the term for the sum of $5000, and within sixty days after the exercise of such option the lessor agreed to institute tax foreclosure proceedings to clear delinquent taxes. The lease and option further provided that the lessor waived payment of rent for the first two years in lieu of improvments to be made by the lessee, and in addition lessor acknowledged receipt of $500 as security for the performance of the covenant, which sum was to be applied to payment of the last year's rental. The lease and option were executed by Robert A. McDonald and Washington Porter II, president and secretary, respectively, of the Lakeside Galleries, acting for the corporation.

The lease itself provided that the premises were to be occupied as a "Defense Working Girls' Home and for no other purpose whatever." Although the premises were admittedly in an abandoned and uninhabitable condition, a printed form of lease commonly used for the renting of inhabitable properties was used, and contained provisions prohibting the subletting or alteration of the premises, or assignment of the lease. Another provision restricted appellee as lessee from allowing the premises to remain vacant for more than ten days. Still another clause provided: "In case the premises shall be rendered untenantable by fire or

other casualty, the Lessor may at his option terminate this lease, or repair said premises within thirty days, and failing so to do, or upon destruction of said premises by fire, the term hereby created shall cease and determine." The lease and option were filed for record November 28, 1944.

Appellee alleged in his complaint, and sought to prove on the hearing, that he took possession of the premises on July 1, 1944, and jointly with one Steele Smith commenced a program to improve and rehabilitate the buildings thereon to make them fit for occupancy. He further alleges that in September, 1944, he notified Lakeside Galleries of his intention to exercise the option; that he was ready to pay the balance of the purchase price and requested Lakeside Galleries to institute tax foreclosure proceedings, which they failed to do, and that he, appellee, continued to remain in open possession of the premises and continued to improve and restore them.

On November 16, 1944, Lakeside Galleries conveyed the premises covered by the lease to appellant, Myrtle Wall, by quitclaim deed, which made no mention of the lease. The deed, which was recorded the same day, was signed by the Lakeside Galleries, Inc., by Robert A. McDonald, president, attested to by Washington Porter II, secretary, and acknowledged before a notary public. The consideration was shown to be $1500. The deed as recorded did not bear the corporate seal of the corporation, but the evidence indicates that the seal was affixed some two weeks after its execution and the deed reacknowledged before the same notary public. On December 19, 1944, a fire broke out in the residential building on the premises which, according to appellee's witnesses, was 25 per cent destroyed, while appellant's witnesses say that 65 per cent was destroyed. The art gallery was not damaged by the fire. Appellee alleged and sought to prove that even after the fire he remained in possession of the premises, cleaned up the fire debris, and continued his efforts to make the premises inhabitable. On

May 31, 1945, appellant, Myrtle Wall, through her attorney, David H. Feldman, served a notice on appellee demanding possession of the premises, which was appellee's first knowledge that Myrtle Wall had an interest in the premises, or that there was any intention of cancelling his lease with Lakeside Galleries. Shortly thereafter appellee filed his complaint in this proceeding. Myrtle Wall and Lakeside Galleries, Inc., were made parties defendant along with others whose interests do not require consideration in this opinion. The decree of the trial court found that the conveyance of the premises from Lakeside Galleries, Inc., to Myrtle Wall was valid and binding; that she took the property subject to the lease and option; that appellee was entitled to specific performance of his option to purchase against Myrtle Wall; and that the claims and interests of the other defendants were clouds on the title of the real estate. Myrtle Wall alone has appealed from that decree, and appellee, Mack Bryant, has filed no cross appeal.

Appellant served a copy of notice of appeal only on Bryant, the plaintiff-appellee. Because of this, the latter has filed a motion in this court to dismiss the appeal for appellant's failure to serve similar notices on her codefendants, which they say is required by Rule 34 of this court. The motion has been taken with the case. The pertinent portion of Rule 34 is as follows: "A copy of the notice by which the appeal is perfected shall be served upon each party, whether appellee or co-party, who would be adversely affected by any reversal or modification of the order, judgment or decree, * * *." Our interpretation of this rule has been that where notice of appeal by certain defendants is not given to other defendants who do not appeal, and the reversal or modification of the decree appealed from will not be prejudicial to the nonappealing defendants, the appeal will not be dismissed. (*Smith* v. *Farmers' State Bank,* 392 Ill. 456.) Our examination of the record indicates that no relief was granted to or against some of the

nonappealing defendants, who would thus neither gain nor lose by a reversal or modification of the decree. The nonappealing defendants against whom relief was granted by the decree would not be affected adversely by a reversal or modification of it, but rather, since all claim of title to the real estate has been taken from them, they could only gain by such reversal. Rule 34 does not require that notice of appeal be given to codefendants so affected. Appellee's motion to dismiss the appeal is denied.

An examination of the pleadings and proof indicates that appellee's theory was that the deed from Lakeside Galleries to appellant was voidable as to him; that he had exercised his option to purchase prior to such conveyance and was thus entitled to a decree of specific performance against Lakeside Galleries. By the complaint he also sought to compel Lakeside Galleries to discharge the obligation of the delinquent taxes on the premises. The master found, however, and the trial court decreed, that the deed from Lakeside Galleries to appellant was valid; that it was made subject to appellee's lease and option, and that appellee having made tender of the purchase price to the master was entitled to a decree of specific performance against Myrtle Wall. The decree also found that under the terms of the option neither Wall nor Lakeside Galleries was liable for the payment of delinquent taxes. Appellee has filed no cross appeal from such findings of the trial court, but in his brief and argument filed in this court he urges that the court's decree should be modified in those respects. In the absence of a cross appeal the matters urged by appellee are not properly before us, and thus not subject to review on this appeal.

Appellant, Wall, by her answer to the complaint, neither admitted nor denied that a lease had been executed between Lakeside Galleries and appellee, and denied that the latter had ever requested that tax foreclosure proceedings be instituted by herself or Lakeside Galleries. She alleged

that she was a *bona fide* purchaser for value, without notice of appellee's interest in or possession of the premises. As a further defense she alleged that the lease to appellee had terminated, and his option with it, by reason of the premises having been rendered untenantable by fire, and not repaired within the thirty days provided in the lease. As previously stated, the trial court held that the lease and option had not terminated; that appellee had exercised his option; that the conveyance from Lakeside Galleries to appellant was subject to the lease and option, and that appellee having tendered the purchase price to the master was entitled to specific performance against appellant.

By virtue of the errors assigned in this court, appellant seeks a reversal of the decree on the grounds: (1) that appellee had failed to exercise his option to purchase; (2) that the lease, and the option with it, were terminated because of the destruction of the premises by fire; (3) that the lease terminated because appellee had breached several of its terms, and (4) that even if the lease was not terminated and appellee had exercised his option with Lakeside Galleries, specific performance against appellant should be denied because she is a *bona fide* purchaser for value without notice of any outstanding interest of appellee.

As to the first contention made, the master neither found nor concluded that appellee had exercised his option to purchase from Lakeside Galleries; however, the chancellor found in his decree that appellee had exercised his option. In the complaint appellee alleged that he had notified and advised Lakeside Galleries of his election to exercise his option to purchase the premises, and applied to the corporation to institute tax foreclosure proceedings as provided in the option. His proof was to the effect that the option had been exercised in September, 1944. By her answer appellant did not deny that appellee had exercised his option but denied only that application had been made either to Lakeside Galleries or appellant to institute the

tax foreclosure proceedings. The option agreement does not, by its terms, make an application or demand for tax foreclosure proceedings a condition precedent to the exercise of the option, but states merely that after the option to purchase is exercised "Lessor agrees to institute Tax Foreclosure proceedings within 60 days in order to clean up unpaid taxes." The phrase "within 60 days" can only refer to the date on which the option to purchase is exercised. Thus, since there was no denial, it stands admitted by the pleadings that appellee had exercised the option to purchase. (Ill. Rev. Stat. 1945, chap. 110, par. 164(2).) The contentions of appellant going to what she calls inadequacies of the proof on this issue need not be considered.

The next contention of appellant is that the lease was terminated by the fire of December 19, 1944. Even if appellee had not previously exercised his option to purchase, there is, in our opinion, serious doubt as to whether the fire would have had the effect of terminating the lease. Such questions became moot, however, and were so regarded by the master and chancellor, in view of the fact that appellee had exercised his option to purchase in September, 1944, and was entitled to performance of the contract prior to the time of the fire. There is no merit to this contention.

As a further ground for reversal appellant urges that the lease was terminated by the fact that appellee breached many of its terms. She contends that the lease terminated: (1) by failure of appellee to comply with the covenant requiring him to carry certain insurance on the premises; and (2) by reason of the fact that he assigned the lease to one Steele Smith, despite a prohibition against assignment contained in the lease. Neither of these grounds was pleaded as a defense to the complaint. In order to urge a defense in a chancery proceeding such defense should clearly be set up in the answer. (*Rice* v. *Winchell,* 285 Ill. 36.) It has long been a rule of procedure that a defense not made

in the court below will not be considered when the record is reviewed here. (*Bittner* v. *Field,* 354 Ill. 215; *Hill* v. *Sifferman,* 230 Ill. 19; *City of Mattoon* v. *Noyes,* 218 Ill. 594.) Thus the defenses set up by appellant for the first time in this court will not be considered. As a result of the proof introduced before the master, appellant did contend in the trial court that the lease had been rendered nugatory by the assignment to Steele Smith. The master found that the evidence showed no assignment, but rather only a joint venture between appellee and Smith. In view of the fact that such defense was not made an issue in the case, the propriety of such finding is not before us. In *Johnson* v. *Johnson,* 114 Ill. 611, quoting from Daniell's Chancery Practice, this court said "that a defendant is bound to apprise the complainant, by his answer, of the nature of the case he intends to set up, and that a defendant cannot avail himself of any matter in defense which is not stated in his answer, even though it should appear in the evidence." A complainant in a chancery suit cannot make one case by his bill in the lower court, and, having failed there, urge a different one on appeal. (*Waller* v. *Hildebrecht,* 295 Ill. 116; *Butler* v. *Miller,* 208 Ill. 231.) Appellant also urges as defenses in this court that the contract sought to be enforced was indefinite and uncertain, and that it lacked mutuality of obligation and remedy. These defenses also will not be considered for the first time by this court on review.

Appellant next attacks the validity of the lease and option, contending that although it was signed by the president and secretary of Lakeside Galleries, Inc., such lease was not authorized by the board of directors. The lease also bore the corporate seal. We held in *Bach Brick Co.* v. *City of Chicago,* 335 Ill. 101, that: "A deed purporting to have been executed by a corporation, which bears its seal and is signed by its officers or agents, will be presumed to have been executed by its authority. [Citations] The pre-

sumption is not overcome by the mere failure to show an affirmative vote by the directors or other body exercising the corporate authority, authorizing the seal to be affixed. Recitals are *prima facie* sufficient to establish the fact." There is nothing in this record which rebuts the *prima facie* recitals of the lease, or supports appellant's contention that it is invalid.

There remains for consideration only the question (which the master describes as the only issue of genuine merit in the defense,) whether the possession asserted by appellee under his lease was so open and notorious as to constitute notice to persons, *i.e.*, appellant, contemplating the purchase of the premises. Appellee contends that following the execution of the lease he went into actual, open and notorious possession of the premises, and although his lease was not recorded until after the premises had been quitclaimed to appellant and the latter's deed recorded, appellant had knowledge and notice of his possession. Appellant denies that she had such notice, actual or constructive. The evidence introduced by the parties in support of their positions is in great conflict. The gist of appellee's testimony was that he had entered into possession immediately after the execution of the lease, boarded up the buildings, straightened up a fence, and, along with his joint venturer Smith, commenced to rehabilitate and improve the buildings. Many receipted bills were introduced into evidence. One showed that on July 24, 1944, appellee secured a water permit and paid the city of Chicago $40 on the water bill for the premises; another showed that on December 12, 1944, he made a deposit of $100 with the electric company for electric service; on December 1, 1944, coal was purchased and sent to the buildings. Also introduced into evidence were a set of plans for the remodeling of the premises which had been approved by the Chicago building department on August 8, 1944. Bryant and Smith both testified that they worked personally about the place and also hired men who

were shown to have repaired the heating plant, installed wiring, restored windows, doors and walls, and to have pumped water from the cellars of the buildings. After the fire of December 19, 1944, appellee caused the debris to be cleaned up and hauled away. Appellee also testified that in 1944 he maintained a caretaker and a big dog on the premises. One Reed, a neighbor, corroborated their testimony to the extent that he stated he saw men working on the premises during the disputed period, and also heard a radio, presumably that of the watchman, playing at night. One Jarvis, who had secured an interest in the land at a bailiff's sale, testified that he had seen someone working on the premises, had seen the new wiring and windows, but was vague as to the time. Appellee also sought to introduce other receipted bills showing that materials were being purchased for use on the premises. However, they were not sufficiently connected up with the repair of the property so as to be allowed into evidence. One such bill was shown to be utterly false and was a mere survey for materials needed rather than a receipted bill as it was represented to be.

To refute appellee's evidence of open and actual possession, appellant introduced the testimony of her attorney, one Feldman; a real-estate agent named Meyers, who was related to appellant; Thomson, another real-estate agent; and one Lillian Ward. Appellant, Myrtle Wall, did not testify on her own behalf and her exact whereabouts and identity were never clearly established. When questions about these matters and the true interest of Myrtle Wall in the transaction were asked of Feldman, he was either evasive or refused to testify at all. He did testify that, acting as attorney for appellant, he checked the property records within a few days of the conveyance from Lakeside Galleries to Myrtle Wall and that he found no record of appellee's lease and option. He also stated that he visited the premises themselves in the company of Meyers within

a week before the deed to appellant; that the buildings were deserted; that there were no fixtures, windows, or any signs of life or occupancy about the premises; and that he had walked about freely and made a thorough examination. The testimony of Meyers was to the same effect. He further stated that the same conditions existed in July, October and November of 1944 when he visited the site, and that on all occasions the doors, windows and gates were open. Thomson testified that he had been retained by Meyers in November, 1944, as agent to rent the disputed premises. He stated that the buildings were completely vacant, and while Feldman and Meyers testified that the doors and windows were wide open in November, 1944, Thomson stated that he had admitted himself to the residential building by a key to the front door which had been given to him by Meyers. Lillian Ward testified that in November, 1944, she inspected the premises with her husband and Meyers, with a view to leasing them from Meyers. She stated that they were vacant, in disrepair, and that there was no dog or watchman there. She, too, stated that the front door was open.

Under the circumstances shown by the record we are of the opinion that the equity of this case lies with the appellee, and the finding of the chancellor that appellant purchased the property with notice of the interest of appellee is not against the manifest weight of the evidence. A purchaser is bound to inquire of the person in possession by what tenure he holds and what interest he claims in the premises. (*German-American Bank* v. *Martin*, 277 Ill. 629.) While appellant urges that she was entirely ignorant of appellee's possession, we have held that actual notice of possession is immaterial, if the facts were sufficient to put appellant on inquiry. (*Mallett* v. *Kaehler*, 141 Ill. 70.) The facts here were, in our opinion, sufficient to put appellant on inquiry. It is well settled that whatever is sufficient to put a party upon inquiry is notice of all facts

which pursuit of such inquiry would lead to, and without such inquiry no one can claim to be an innocent purchaser as against him whose possession raises the inquiry. (*Carnes* v. *Whitfield,* 352 Ill. 384; *Whitaker* v. *Miller,* 83 Ill. 381.) Appellant thus was put on sufficient inquiry by appellee's possession, and she is deemed to have had notice of all the facts of his possession. The quitclaim deed of Lakeside Galleries to appellant passed no greater or better title than belonged to the grantor, and appellant may be said to have purchased with full notice of all rights of appellee. Appellant not being a *bona fide* purchaser without notice may thus be compelled to perform the contract of her grantor. *Forthman* v. *Deters,* 206 Ill. 159.

The decree of the circuit court of Cook County is affirmed.

*Decree affirmed.*