HERBERT L. MAHRENHOLZ *et al.*, Plaintiffs-Appellants, *v.* COUNTY BOARD OF SCHOOL TRUSTEES OF LAWRENCE COUNTY *et al.*, Defendants-Appellees.

Fifth District   No. 83—177

Opinion filed June 21, 1984.

Roscoe D. Cunningham and Wanda Ellen Wakefield, both of Lawrenceville, for appellants.

John F. Borden, of Gosnell, Benecki, Borden & Enloe, Ltd., of Lawrenceville, for appellee Board of Education, Community Unit School District #20, Lawrence and Crawford Counties, Illinois.

William Strange, State's Attorney, of Lawrenceville, for appellee County Board of School Trustees of Lawrence County, Illinois.

JUSTICE KASSERMAN delivered the opinion of the court:

This case involves a 1974 action to quiet title to real property located in Lawrence County, Illinois. This is the second time the case has been before this court. On the first occasion, plaintiffs, Herbert L. and Betty Mahrenholz, appealed from a judgment against them on the pleadings and in favor of defendants, County Board of School Trustees of Lawrence County and Board of Education, Community Unit School District Number 20, Lawrence and Crawford Counties. This court reversed and remanded. (*Mahrenholz v. County Board of School Trustees* (1981), 93 Ill. App. 3d 366, 417 N.E.2d 138.) On remand, the circuit court granted defendants' motion for summary judgment, and plaintiffs appeal. Defendants have filed no cross-appeal.

The pertinent facts prior to this court's 1981 remandment of this cause are sufficiently stated in the 1981 opinion of this court and need be only briefly summarized. According to the pleadings, the facts are as follows:

On March 18, 1941, W. E. and Jennie Hutton executed a warranty deed conveying certain land (hereinafter the Hutton School grounds) to the trustees of School District No. 1, the predecessors of defendants on this action. The deed provided: "This land to be used for school purposes only; otherwise to revert to Grantors herein." Subsequently, in July 1941, the Huttons conveyed a tract of real estate including the Hutton School grounds to Earl and Madeline Jacqmain,

excepting from the conveyance the tract conveyed to the school trustees on March 18, 1941. W. E. Hutton died intestate on July 18, 1951, and Jennie died intestate on February 18, 1969. Plaintiffs' pleadings allege that W. E. and Jennie Hutton left as their only legal heir their son, Harry E. Hutton.

Defendant Community Unit School District No. 20, successor to the grantee, held classes in the Hutton School until May 30, 1973. After that date, the district has used the property for storage purposes only; however, a dispute exists as to the nature of property stored there.

By deed dated October 9, 1959, Earl and Madeline Jacqmain conveyed to plaintiffs over 390 acres of land which include the 40-acre tract from which the Hutton School grounds were taken. This deed excepted the Hutton School grounds but purported to convey the disputed future interest, as follows:

"Also, except the following tract of land which was on the 18th day of March, 1941, by the said grantors conveyed to the Trustees of Schools of District Number One (1) of the Town of Allison, in the County of Lawrence and State of Illinois, and described as follows:
[legal description]
and containing one and one-half (1½) acres, more or less; Reversionary interest to Grantees; *** ."

By document dated May 7, 1977, and filed in the recorder's office of Lawrence County on September 7, 1977, Harry E. Hutton conveyed to plaintiffs all of his interest in the Hutton School property. In a document dated September 6, 1977, and filed in the recorder's office on October 4, 1977, entitled "Disclaimer and Release," Harry E. Hutton disclaimed and released any possibility of reverter, right of entry for condition broken, or similar interest, in favor of defendant County Board of School Trustees. This document recited that it was made for the purpose of releasing and extinguishing any right Harry E. Hutton may have had in the "interest retained by W. E. Hutton and Jennie Hutton, *** in that deed to the Trustee's of School District No. 1, Lawrence County, Illinois dated March 18, 1941, and filed on the same date *** ."

In the trial court's order of March 21, 1979, dismissing plaintiff's third amended complaint, the trial court concluded that the March 18, 1941, deed created a fee simple subject to a condition subsequent followed by the right of entry for condition broken, rather than a determinable fee followed by a possibility of reverter.

Plaintiff appealed, and this court reversed and remanded, conclud-

ing that what the grantors intended to create was a fee simple deter-
minable followed by a possibility of reverter. The Illinois Supreme
Court denied defendants' petition for leave to appeal. In further pro-
ceedings before the trial court, the parties pursued discovery and
defendants answered plaintiffs' third amended complaint. Defendants
moved for summary judgment on various grounds, including that
there was no genuine issue as to whether defendants were using the
Hutton School property for school purposes.

Accompanying defendants' motion for summary judgment was the
joint affidavit of James Courtney and William Waggoner, respectively
superintendent and assistant superintendent of defendant Community
Unit School District No. 20, stating that the affiants had read their
respective affidavits filed in the circuit court on December 21, 1978,
and that the statements of fact therein were true then and were still
true.

In his 1978 affidavit, Mr. Waggoner stated that the school district
used the Hutton School property for purposes other than the conduct-
ing of regular classes, "including particularly storage of furniture,
building and maintenance [sic], cafeteria equipment, band risers and
bulky items required by the District." Mr. Waggoner also stated that
if there is a substantial increase in the school age population in the
district in the near future, the school district might again conduct
classes on the Hutton School property. Mr. Waggoner also stated that
the building was kept locked and the lawn kept mowed. Several pho-
tographs accompanying the affidavits as exhibits were referred to in
the affidavit as depicting the interior, exterior, grounds, and contents
of the Hutton School building. The interior photographs show rows of
desks, chairs with writing arms, and stacked construction materials.

Mr. Courtney stated in his 1978 affidavit that the school district
was using most of the interior of the Hutton School building for stor-
age, particularly of "school personal property." Mr. Courtney also
stated that the school district continued to mow the lawn and pay for
utilities for the building. Mr. Courtney also confirmed Mr. Waggoner's
statements regarding the possibility of resumption of classes.

Also accompanying defendants' motion for summary judgment
was Mr. Waggoner's "Affidavit of Inventory and Maintenance."
Therein, Mr. Waggoner stated that since May 1973, the school district
had continuously used the Hutton School property for warehousing
and storage, including a supply of left- and right-handed desks of vari-
ous sizes, a large inventory of repair parts for desks, chairs, lockers,
electrical appliances, motors and "necessary equipment," sheets of
paneling and other materials left from the remodeling of Arlington

School. According to Mr. Waggoner, maintenance personnel were at the Hutton School property about 25 to 30 times per year to pick up, deliver and exchange equipment, including desks and desk parts, remodeling materials, doors, and lockers and locker parts. According to Mr. Waggoner, if the Hutton School were not available, the school district would be required to purchase or lease other storage space for warehousing cafeteria equipment, out-of-season athletic equipment, desks, chairs, office equipment, band risers, and lockers. Mr. Waggoner stated that the roof of the Hutton School had been resurfaced twice since 1974. Included in the affidavit was a list of electricity bills and mowing expenses for the property for each school year from 1973-1974 to 1982-1983. Appended to Mr. Waggoner's affidavit was a room-by-room inventory of the contents of Hutton School, dated November 24, 1982.

In an affidavit filed January 4, 1979, plaintiff Herbert Mahrenholz stated that defendants were storing "junk" in Hutton School as a "ruse" to avoid reverter of title. In an affidavit filed January 17, 1983, in opposition to defendants' motion for summary judgment, Mr. Mahrenholz stated that since May 31, 1973, Hutton School had been used only for the storage of junk and surplus desks, and that since the school had closed in 1973, he and his agents had entered the building at will with a passkey.

In a joint affidavit filed January 17, 1983, in opposition to defendants' motion for summary judgment, Frank O'Brien and Paul S. Thompson stated that they were trustees and directors of School District No. 1, Allison Township, Lawrence County, in 1941 and that the third trustee and director was now deceased. Mr. O'Brien and Mr. Thompson stated: "It was our understanding ***, and we believe that it was the understanding of Mr. & Mrs. Hutton, that school purpose meant actual holding of classes and the teaching of students in the school building ***."

In an affidavit filed by plaintiffs the same date, affiant Warren Robeson stated that he had farmed in Allison Township, Lawrence County, for 40 years, that he now farmed in the immediate vicinity of Hutton School and that he had often gone into and about the building. According to Mr. Robeson, in 1942 or 1943 he asked W. E. Hutton what he was thinking when he gave the school board the site in the middle of his farm, and Mr. Hutton responded: "They need to have school in this area, and when they quit holding school there the land will go back to the farm." According to Mr. Robeson, he had inspected the interior of Hutton School on January 17, 1983, and had found a few desks added to the normal supply on hand when classes

were discontinued in 1973, that nothing of apparent value or utility was stored there, that most of the items could fairly be described as junk, that the roof leaked, that numerous panes of glass were broken, that the wall leading to the basement was cracked, that ceiling tiles were off, that the gymnasium floor was wet, and that the water heating system appeared to be frozen.

In an affidavit filed December 7, 1982, plaintiffs' attorney stated that Jennie Hutton had no children but stood "in loco parentis" to Harry E. Hutton. The affidavit also purported to state the names of Jennie Hutton's heirs.

Three discovery depositions dated August 13, 1982, also accompany the record on appeal. The deponents are Mr. Courtney, Mr. Waggoner, and Mr. Mahrenholz.

Mr. Courtney deposed as follows: The 1973 closing of Hutton School was not pursuant to formal resolution; there was no formal characterization of the closing as permanent or temporary. Enrollment in the district had dropped from 2400 students during the 1972-1973 school year to 1800 during the 1981-1982 school year. The building was unheated; the plumbing had been drained to prevent freezing. An interior drain in the roof had been frozen and broken and had been repaired by welding. No painting had been done since the 1973 closing. The property was insured. The witness stated that while Hutton School was so far from the school district's other schools that it was not an economical storage site, it could be reopened for classes quickly and cheaply compared to holding a referendum for a new building.

Mr. Waggoner testified as follows: Hutton School was visited by school district personnel for dropping off or picking up equipment less than once a week on average. The district had no other unallocated storage space. Many broken windows had been replaced with plywood; the building had been recently cleaned; some ceiling tiles had fallen; the roof had been sealed twice in 1973; and the district had erected "no trespassing" signs.

Plaintiff Herbert Mahrenholz testified that he was "in possession" of the Hutton School property about two years ago for a period in excess of six months, as shown by the fact that his hired man had put glue in the gate locks, and that no one had bothered the locks during that time; the witness had mowed the property four or five times, once on request of the school board, on which occasion he was paid with a check he never cashed.

Regarding plaintiffs' contention that the trial court erred in concluding as a matter of law that the Hutton School property was still

being used for "school purpose," we must first address the parties' disagreement as to the matters which should properly be considered in making that determination. Plaintiffs urge that the O'Brien, Thompson, and Robeson affidavits show that the grantors intended by "school purpose" the actual teaching of classes. Defendants respond that such extrinsic evidence of intent would not be admissible at a trial and that only the language of the deed should be considered.

■■ The parol evidence rule requires that the nature and extent of the estate granted be determined, as a matter of law, from the deed itself. Parol evidence may be received to apply the deed to the subject matter, not to change its legal effect. While the court will receive evidence of the surrounding circumstances and collateral facts, so as to place itself in the situation of the parties at the time of executing the instrument, if there still remains incurable and hopeless uncertainty, it cannot be cured by extrinsic evidence. A deed speaks for itself; the only purpose of construction is to find out what it means, and that depends upon the language used. (*Rockford Trust Co. v. Moon* (1938), 370 Ill. 250, 253-54, 18 N.E.2d 447, 449.) The intention to be considered is that which is apparent and manifest from the instrument itself. In arriving at that intention it is not permissible to go beyond the four corners of the deed, and any words used by the grantor which have come to have a definite legal significance will be construed by the court strictly according to their legal effect, even though the grantor's intention is thereby frustrated. The same license permitted in the construction of wills is not permitted in construing deeds. (*Duffield v. Duffield* (1920), 293 Ill. 300, 303, 127 N.E. 709, 710.) Where doubt arises as to the intended meaning of the words used by the grantor in the deed, such doubt must be resolved in favor of the grantee and against the grantor. *Williams v. Swango* (1937), 365 Ill. 549, 555, 7 N.E.2d 306, 309.

■■ Plaintiffs argue, and we agree, that the phrase "school purpose" as used in the 1941 deed is inherently ambiguous. However, the O'Brien, Thompson, and Robeson affidavits may not be considered in resolving this ambiguity. Under the parol evidence rule, the statements in these affidavits as to what the grantors intended may not be used to limit the estate granted to a greater extent than the words in the deed indicate. Thus, to the extent that these affidavits do so, the affidavits may not be considered. (See *Jackson v. O'Connell* (1961), 23 Ill. 2d 52, 55, 177 N.E.2d 194, 195.) To the extent that the affidavits are consistent with the words used in the deed, the affidavits are merely cumulative.

■■ Accordingly, we turn to the limiting phrase as being most in-

dicative of the grantors' intention. "Purpose" has been defined as "something that one sets before himself as an object to be attained: an end or aim to be kept in view in any plan, measure, exertion, or operation ***." (Webster's Third New International Dictionary 1847 (1971).) In light of this definition, it appears that if the grantors had intended the school board's estate to end when classes ceased, as plaintiffs contend, a less ambiguous expression of that intent could have been employed, *e.g.,* "so long as classes are held upon the property." We find the parties' failure to use such a phrase as strongly supporting the conclusion that the grant was not dependent on the actual continuous holding of classes. See *McCullough v. Swifton Consolidated School District* (1941), 202 Ark. 1074, 1076, 155 S.W.2d 353, 354.

We find no Illinois cases defining "school purpose" in the context of a deed. Elsewhere, in *Ballantyne v. Nedrose Public School District No. 4, Ward County* (N.E. 1970), 177 N.W.2d 551, the court concluded that the school board's use of an old building for storage of some of the school board's equipment and supplies evinced an intention to continue to use the building and land for "school purposes," as required in the deed in question, and did not amount to an abandonment of the property for such purposes. *Ballantyne* supports the proposition that something less than the holding of classes, such as the storage of equipment and supplies, may be a "school purpose."

In *Craig v. Unknown Heirs* (Okla. 1961), 358 P.2d 835, the deed stated that the property was to be used for a "School House site only" and would revert if used for any other purpose. The schoolhouse was used for storage of seats. The court concluded that no intention to use the property for a public school had been shown. The deed in *Craig* is more restrictive than the instant deed, as the latter does not expressly require a "school house" ("a building used as a school" (Webster's Third New International Dictionary 2031 (1971))).

The deed in *Putney v. School District No. 4* (1934), 215 Wis. 539, 255 N.W. 76, provided for reverter when the property was no longer wanted for "school purposes." The court found that the school district had abandoned the property by erecting a new building elsewhere and by removal from the property in question of all school paraphernalia, furniture and equipment except for a few articles of inconsequential value. By contrast, in the instant case, even Mr. Robeson's affidavit, filed on behalf of plaintiffs, establishes that the Hutton School building is used for storage of a large number of desks.

We have discussed the above cases because this court cited them without analysis in the opinion on the first appeal of this cause and

because the parties differ in their interpretation of these authorities. The following authorities also support the view that "school purpose" may encompass something less than the actual holding of classes: *Koonz v. Joint School District No. 4* (1950), 256 Wis. 456, 41 N.W.2d 616 (deed specified "school purposes only," otherwise to revert; held, no reverter where building was left with all equipment and books, a coal supply, and was insured); *McCullough v. Swifton Consolidated School District* (1941), 202 Ark. 1074, 155 S.W.2d 353 (deed specified "school purposes only," to revert if abandoned by school district; held, where the property was to be used for school bus waiting station, bus "turnaround," and gymnasium, the school district has not abandoned it for school purposes); and *Board of Education v. Hunter* (1940), 190 Ga. 767, 10 S.E. 2d 749 (deed specified "school purposes," and reversion if the property ceased to be used for "educational purposes"; held, board's constructing a larger school nearby did not suffice to show abandonment for school or educational purposes).

Parenthetically, we note that the phrase "school purposes" is often used in statutes of this State today (*e.g.*, Ill. Rev. Stat. 1981, ch. 122, pars. 5—17, 5—21, 5—30, 10—22.12), as it was at the time of the 1941 deed (*e.g.*, Ill. Rev. Stat. 1939, ch. 122, pars. 39, 327.41, 327.51, 327.57, 346). However, there appears to have been no litigation concerning the meaning of the phrase as used in the statutes, and the context in which the phrase is used is, so far as we can determine, not helpful in the present inquiry.

■ Upon consideration of the question of law as to the extent of the estate conveyed by the 1941 deed, we are of the opinion that, as the phrase is used in the instant deed, the term "school purpose" does not require the actual holding of classes. Rather, we agree with the trial court that some alternate use is permissible that would still be within the realm of "school purpose" as that term is used in the deed. However, we deem it to be impossible to ascertain whether defendants' use constituted use for school purposes in view of the conflicts in the affidavits and depositions of record. To the contrary, we conclude that those conflicts raise a genuine issue of material fact upon the issue of whether the Hutton School property is being used for "school purpose," which prevents disposition of this cause by summary judgment.

The affidavits and depositions of Mr. Waggoner and Mr. Courtney indicate that the Hutton School building is visited almost weekly, is maintained insofar as is practicable, and is used to house a variety of school-related equipment, which could be stored elsewhere only with difficulty and inconvenience and at extra expense. On the other hand,

the affidavit of Mr. Robeson indicates that the building is housing nothing of value other than a few more chairs that were needed when Hutton School was used for classes. Summary judgment is appropriate if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that movant is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1981, ch. 110, par. 2—1005(c).) The right of the moving party to summary judgment must be free from doubt. *Sanders v. Frost* (1969), 112 Ill. App. 2d 234, 238, 251 N.E.2d 105, 106.

■ Our conclusion that a genuine issue of material fact exists in this case requires that we address defendants' alternative contention that the judgment of the circuit court should be affirmed on other grounds, grounds which the trial court found moot and did not rule upon. Plaintiffs urge that defendants as appellees were required to cross-appeal to raise those issues. We do not agree. The appellee may advance any argument supported by the record to sustain the judgment of the circuit court. (*Peterson v. Norfolk & Western Ry. Co.* (1976), 42 Ill. App. 3d 570, 573, 356 N.E.2d 391, 393.) In the two cases relied upon by plaintiffs in this regard, the appellees were seeking additional relief on review, which does require cross-appeal, not mere affirmance of the judgment. *Bryant v. Lakeside Galleries, Inc.* (1949), 402 Ill. 466, 84 N.E.2d 412; *De Phillips v. Mortgage Associates, Inc.* (1972), 8 Ill. App. 3d 759, 291 N.E.2d 329.

■ Defendants alternatively argue that plaintiffs cannot have title quieted in themselves because defendants are in possession of the property. Defendants contend that plaintiffs should have filed an action in ejectment instead.

Generally, as a prerequisite to maintaining a suit to quiet title, it must be shown that the land in controversy was either in the possession of the plaintiffs or unoccupied when the action started. (*McCookey v. Winter* (1943), 381 Ill. 516, 526, 46 N.E.2d 84, 89.) Plaintiffs urge that they have shown sufficient possession to avoid summary judgment upon that issue. We agree in view of Mr. Mahrenholz' statement that he has entered at will by passkey since 1973, and Mr. Robeson's implicitly corroborative statement that he viewed the interior of the building prior to making his affidavit in plaintiffs' behalf. In any event, if there were no genuine issue of fact as to possession, summary judgment may not be affirmed on the grounds that plaintiffs lacked possession or failed to establish that the premises were unoccupied because denial of relief to plaintiffs on that ground would not necessarily preclude their filing an ejectment

action. See *McGookey v. Winter* (1943), 381 Ill. 516, 527, 46 N.E.2d 84, 90.

■ Defendants also argue that the attempt by W. E. and Jennie Hutton to convey their reversionary interest in the Hutton School property to the Jacqmains extinguished the possibility of reverter. While various jurisdictions do follow the rule that attempted conveyance of a naked possibility of reverter destroys it, Illinois is not among them. *Pure Oil Co. v. Miller-McFarland Drilling Co.* (1941), 376 Ill. 486, 498, 34 N.E.2d 854, 859.

■ Defendants argue that the 1977 purported conveyance of the property by Harry Hutton to plaintiffs was "champertous and void" as an attempt to sell a dormant or pretended title to land held adversely by another. Conveyances of land by a title holder not in possession are not contrary to present Illinois law. 7 Ill. L. & Prac. *Champerty and Maintenance* Sec. 5 (1954); *City of Chicago v. Vulcan Iron Works* (1879), 93 Ill. 222, 224-25.

Defendants contend that the 1977 deed from Harry E. Hutton conveyed nothing to plaintiffs because W. E. and Jennie Hutton's possibility of reverter was held by them in joint tenancy, Jennie having survived W. E. and the affidavits showing (contrary to the pleadings) that Harry E. Hutton was neither Jennie's son or her heir, but rather her stepson. Defendants reason that on Jennie's death the possibility of reverter devolved to Jennie's heirs, not to Harry E. Hutton. Plaintiffs respond in their reply brief that there exists a question of fact as to whether the grantors held title in joint tenancy as shown by certain deeds in favor of W. E. and Jennie Hutton which are not asserted to be in the record on appeal and which we do not find included there. Plaintiffs also urge that even if their claim depends on the claims of the heirs of Jennie, deeds from all of those heirs to the plaintiffs "are attached hereto and were furnished to opposing counsel, January 3, 1983."

■ Attachments to briefs not otherwise of record are not properly before the reviewing court and cannot be used to supplement the record. (*Tomlen Group, Ltd. v. Goldfarb* (1981), 101 Ill. App. 3d 154, 157, 427 N.E.2d 1047, 1049.) However, the affidavit in opposition of summary judgment states in pertinent part: "Plaintiffs have deeds of conveyance of described real property from each of the other heirs at law of Jennie Hutton as hereinafter set forth." This sworn statement, taken together with plaintiffs' attorney's affidavit of heirship, establishes the existence of said deeds in the context of opposing a motion for summary judgment. Therefore, the affidavit introduces the issue into this cause and thereby precludes the award of summary

judgment.

The record discloses no issue of fact as to whether W. E. and Jennie Hutton owned the possibility of reverter as joint tenants or as tenants in common. Included among the exhibits accompanying defendants' motion for summary judgment is a copy of a 1931 warranty deed, including the tract out of which the Hutton School property was later carved, from the St. Louis Joint Stock Land Bank to W. E. and Jennie Hutton "as joint tenants and not as tenants in common *** ."

Defendants further contend that the instant possibility of reverter could not have been conveyed by the heirs of Jennie Hutton, because a possibility of reverter is neither alienable nor devisable (Ill. Rev. Stat. 1981, ch. 30, par. 37b), although it descends to the grantors' heirs. (*Pure Oil Co. v. Miller-McFarland Drilling Co.* (1941), 376 Ill. 486, 492-93, 34 N.E.2d 854, 857.) However, plaintiffs herein have raised the issue, so far as it pertains to their opposition of defendants' motion for summary judgment, that an event occurred in 1973 which caused defendants' title to cease. If such be true, defendants' fee simple determinable would have been extinguished, and the original grantors' heirs, alleged to be the plaintiffs herein and their predecessors in title, became vested with fee simple title to the land unless the possibility of reverter itself was destroyed prior to termination of the estate granted to defendants' predecessors in title. (376 Ill. 486, 494-95, 34 N.E.2d 854, 858.) Thus, plaintiffs have conveyed to plaintiffs not a mere possibility of reverter but rather fee simple title to the tract in question.

Defendants also argue that any claim derived by plaintiffs from the heirs of Jennie Hutton would be barred because suit was not brought within seven years of the termination of defendants' estate. (Ill. Rev. Stat. 1977, ch. 83, par. 1b.) In this regard, we note that plaintiffs' suit was instituted in 1977 and alleged that defendants' estate had terminated in 1973. Statutes of limitation are designed to prevent recovery on stale demands. The purpose of such statutes is to provide a defendant with sufficient opportunity to investigate the factors upon which liability may be based while such evidence is still as-tainable. (*Brehm v. Sargent & Lundy* (1978), 66 Ill. App. 3d 472, 1.5, 384 N.E.2d 55, 56-57.) Neither the letter of the statute of limitations nor its purpose is inconsistent with plaintiffs' maintaining this suit.

We conclude, therefore, that genuine issues of material fact exist which preclude disposition of the instant case by summary judgment and that it was error for the trial court to enter summary judgment for defendants.

For the foregoing reasons, the judgment of the circuit court of Lawrence County is reversed, and this cause is remanded for further proceedings consistent with the views expressed herein.

Reversed and remanded.

JONES and HARRISON, JJ., concur.