MARIA E. DENNY, Plaintiff-Appellant, *v.* CARL E. BURPO, M.D., Defendant-Appellee.

Fifth District   No. 83—22

Opinion filed May 14, 1984.

KARNS, J., dissenting.

Stephen M. Tillery, of Kassly, Bone, Becker, Dix & Tillery, P.C., of Belleville, for appellant.

Gundlach, Lee, Eggmann, Boyle & Roessler, of Belleville (Richard M. Roessler and William P. Gavin, of counsel), for appellee.

JUSTICE HARRISON delivered the opinion of the court:

Plaintiff Maria E. Denny appeals a judgment in favor of defendant Carl E. Burpo, M.D. The judgment followed a jury trial in the circuit court of St. Clair County, wherein plaintiff alleged that she had developed a vesicovaginal fistula (an opening in her urinary bladder) as a result of surgical procedures negligently performed by defendant. Two issues are presented on appeal. Plaintiff first alleges that the trial court erred in admitting certain testimony of defendant's expert witness during cross-examination. Plaintiff also alleges that she was unfairly limited in her examination of potential jurors during *voir dire.*

The testimony which plaintiff alleges was improperly admitted occurred during plaintiff's cross-examination of defendant's expert witness, Dr. Willard Scrivner, regarding Dr. Scrivner's opinion of a writ-

ten statement by Dr. Matingly, author of a previously identified textbook on operative gynecology, in a separate article published in the American Journal of Obstetrics and Gynecology. The cross-examination proceeded in the following manner:

"[PLAINTIFF'S COUNSEL]: Doctor, are you aware of—I think I may have given you another article, the American Journal of Obstetrics and Gynecology, an article by Dr. Matingly. He is the man who wrote the fifth edition of this text, I believe. Would you agree with the statement, 'In view of our experience with recognized bladder injury repair at the time of operation; [sic] however, we do not believe that the fistulas result from incision or laceration at the time of the operation but rather from inclusion of a bit of the bladder wall within a suture during closure and peritonation of the vaginal vault.'

Do you agree with that statement?

A. I can agree only in part and my disagreement is the fact that as of two days ago attending a seminar at Washington University where Dr. Fair, chief of urology at Barnes Hospital, I posed this very case to him. He said, 'Scrivner, no way.'

Q. Now, excuse me. Whatever another doctor says to a local doctor's response to a medical malpractice case, Your Honor, is not responsive to this question and I can't cross examine [sic] what this other doctor said in this case. There is no way.

THE COURT: Doctor, complete your answer.

A. On the line I was going, Your Honor?

THE COURT: Yes.

A. I was just trying to say that we have literature, textbooks ten to fifteen years old. We have current literature that comes out weekly, every two weeks and every month. The most current thing would be the man who's in charge of the Department of Urology at Barnes Hospital, Washington University. I posed this question to him and he said, 'Scrivner, its got to be devitalized scar tissue. No way because we use the very same suture to even repair bladder injuries with Dexon. That is as far as I can go.'

[PLAINTIFF'S COUNSEL]: I move to strike that as unresponsive, Your Honor.

THE COURT: Well, you asked about the percentages and whether or not he agreed and he just said he didn't agree because the facts are different today than they were in your book. Overruled."

Plaintiff's contention that Dr. Scrivner's report of Dr. Fair's

statement constituted inadmissible hearsay testimony depends, in effect, upon a determination of the precise reference of Dr. Fair's reported opinion. If, as plaintiff maintains, Dr. Fair's statement was not in fact offered to Dr. Scrivner as an opinion regarding the specific assertion contained in Dr. Matingly's article, but rather as an opinion regarding the merit of plaintiff's malpractice action, Dr. Scrivner's report was properly characterized by plaintiff as unresponsive hearsay testimony, and was erroneously admitted at trial. Hearsay evidence is defined as "a statement made out of court, such statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter." (*People v. Carpenter* (1963), 28 Ill. 2d 116, 121, 190 N.E.2d 738, quoting McCormick, Evidence sec. 225 (1954).) "The fundamental purpose of the hearsay rule was and is to test the real value of testimony by exposing the source of the assertion to cross-examination by the party against whom it is offered." (*People v. Carpenter* (1963), 28 Ill. 2d 116, 121.) If Dr. Fair's out-of-court statement was, then, a personal judgment that plaintiff's fistula was the result of devitalized scar tissue, and not the result of defendant's negligence in performing the surgical procedures, it was improperly admitted, since the empirical bases and rational calculations underlying this judgment could not be subject to challenge by means of cross-examination. (*Cf. Adamaitis v. Hesser* (1965), 56 Ill. App. 2d 349, 206 N.E.2d 311.) It is, as the supreme court noted in *Carpenter*, for the purpose of avoiding the prejudice inherent in such unchallengeable judgments, opinions, or assertions of fact that the tradition precluding hearsay testimony is firmly established in Anglo-American law. See also 5 Wigmore on Evidence sec. 1361 *et seq.* (3d ed. 1974).

Defendant contends, however, that Dr. Fair's reported statement was not in fact a judgment on the merit of plaintiff's malpractice claim, but rather a professional opinion regarding the assertion in Dr. Matingly's article quoted by plaintiff's counsel. Defendant argues that the views, expressed orally, of one in Dr. Fair's professional position constitute information of the type reasonably relied upon by experts in Dr. Fair's professional field, and, as such, constitute a recognized exception to the hearsay rule. In defendant's view, then, Dr. Fair's statement merely comprised data upon which Dr. Scrivner's own professional opinion, subject to challenge on cross-examination, was founded. Defendant concludes that Dr. Fair's statement, thus being of the character relied upon by experts in the urological field, is fully admissible according to the rule of *Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E.2d 1322, *cert. denied* (1981), 454 U.S. 836, 70 L. Ed. 2d

117, 102 S. Ct. 140, wherein the supreme court explicitly adopted Rule 703 of the Federal Rules of Evidence. The rule states:

" 'The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.' " *Wilson v. Clark* (1981), 84 Ill. 2d 186, 193.

The rationale of the supreme court in adopting Federal Rule 703 was essentially one of judicial efficiency. In explaining its decision, the court specifically referred to the note of the congressional advisory committee:

"According to the note, allowing expert testimony based on facts not in evidence dispenses with 'the expenditure of substantial time in producing and examining various authenticating witnesses. *** [The physician's] validation, expertly performed and subject to cross-examination, ought to suffice for judicial purposes.' [Citations.]" *Wilson v. Clark* (1981), 84 Ill. 2d 186, 194.

The central issue in *Wilson* engendering adoption of Rule 703 involved expert testimony based on certain hospital records admitted at trial without a proper foundation. The court commented upon the extreme inefficiency of a system requiring an attorney "to call into court every person who made an entry in the hospital records." (*Wilson v. Clark* (1981), 84 Ill. 2d 186, 194.) Noting the high degree of reliability of contemporary hospital records, the court ruled that henceforth it would be proper for an expert to respond to hypothetical questions based on facts contained in hospital records when such records were not themselves in evidence. The court then logically extended this principle to the explicit adoption of Rule 705 of the Federal Rules of Evidence, which states:

" 'The expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination.' " *Wilson v. Clark* (1981), 84 Ill. 2d 186, 194.

The court then commented upon the effect of the rule:

"Under Rule 705 the burden is placed upon the adverse party during cross-examination to elicit the facts underlying the expert opinion. [Citation.] The advisory committee's note to Rule

705 allows an expert opinion without disclosure of underlying facts whether the opinion is based on firsthand or second-hand information. In light of Illinois' extensive pretrial discovery procedures, this does not place an undue burden on the cross-examining party." *Wilson v. Clark* (1981), 84 Ill. 2d 186, 194.

Thus, the policy underlying the supreme court's adoption of Federal Rules 703 and 705 is the promotion of judicial efficiency within the bounds of fairness to the respective parties, such fairness being assured through the extensive access, by means of discovery, to information comprising the foundation of an opposing expert's testimony, and the essential ability to challenge, by means of cross-examination, that same foundation and all inferences purportedly arising therefrom. It is our view, therefore, that if defendant's characterization of Dr. Fair's out-of-court statement as information of the type reasonably relied upon by other urologists in forming their own professional opinions were an accurate one, the statement would logically fall within the scope of admissible secondhand information envisioned by our supreme court in its adoption of Federal Rules 703 and 705, since Dr. Fair's statement, as a basis of Dr. Scrivner's expert testimony, would have been discoverable prior to trial and its premises and inferences subject to challenge within the natural course of Dr. Scrivner's cross-examination. It is our conclusion, however, that the record contains evidence insufficient to support a finding that Dr. Fair's out-of-court statement may properly be so characterized.

Even if we were to accept the proposition, inherent in Dr. Scrivner's testimony, that oral statements of recognized professional leaders such as Dr. Fair may, under certain circumstances, constitute a foundation upon which other experts in the same field may base their own professional opinions, the actual dialogue at trial does not provide adequate indications that Dr. Fair's oral statement constituted such a foundation for Dr. Scrivner's professional opinion regarding the precise issue raised by Dr. Matingly's published work. Dr. Scrivner, having been questioned about the assertion in Dr. Matingly's article, proceeded to state that he (Dr. Scrivner) had "posed this very case" to Dr. Fair, and that Dr. Fair had responded, "Scrivner, no way." Dr. Scrivner's statement that he had posed the "case," and not the "question" or "issue," to Dr. Fair, most reasonably indicates a context in which the specific malpractice action against Dr. Burpo, and not the published assertion of Dr. Matingly regarding the origin of vesicovaginal fistulas, was the subject matter of the conversation and, therefore, of the opinion proffered by Dr. Fair. While Dr. Scrivner, elaborating on Dr. Fair's opinion, specifically stated, "I posed this

*question* to [Dr. Fair]" (emphasis added), the context of Dr. Scrivner's statement is ambiguous, rendering it unclear whether the "question" was a reference to Dr. Matingly's published assertion or Dr. Burpo's alleged surgical negligence. Dr. Fair's answer, reported by Dr. Scrivner, that "[i]t's got to be devitalized scar tissue *** because we use the same suture to even repair bladder injuries with Dexon," appears, according to the logical and grammatical structure of the dialogue, more sensibly responsive to the narrower question of the origin of plaintiff's specific injury than to the broader question of the validity of Dr. Matingly's statement regarding the origin of such injuries in general.

Our review of the record thus compels us to conclude that plaintiff's counsel was correct in characterizing Dr. Scrivner's report of Dr. Fair's statement as one unresponsive to the question of Dr. Scrivner's professional opinion of the published statement of Dr. Matingly regarding the origin of vesicovaginal fistulas. Dr. Scrivner's testimony thus constituted inadmissible hearsay evidence. Since the testimony purported to refute published authoritative medical evidence offered by plaintiff for the purpose of impeaching defendant's expert witness, and since the critical question before the jury—*i.e.*, the origin of plaintiff's injury—was largely contingent upon the credibility of the respective experts, the admission of Dr. Scrivner's testimony was inherently prejudicial to plaintiff's case. We therefore reverse the judgment of the trial court overruling plaintiff's objection to the testimony, and remand the cause for a new trial. Our disposition of this issue renders unnecessary a consideration of plaintiff's allegation that the *voir dire* examination was unfairly limited.

Reversed and remanded.

KASSERMAN, J., concurs.

JUSTICE KARNS, dissenting:

I do not share the majority's view that Dr. Scrivner's explanation of his disagreement with a learned article by Dr. Matingly was unresponsive and contained inadmissible hearsay requiring reversal of the judgment in favor of Dr. Burpo. Asked whether he agreed with a statement which concluded that "*** fistulas result *** from inclusion of a bit of the bladder wall within a suture during closure ***," Scrivner responded, "I can agree only in part ***." The rest of his answer explained that he could give only limited agreement to the quoted statement because of a comment made to him two days before

by Dr. Fair, the chief of urology at Barnes Hospital, during a seminar at Washington University. Dr. Fair's comment to Scrivner addresses the same issue raised by Dr. Matingly's article, that is, the relationship between fistulas and sutures, but arrives at a contrary conclusion: "Scrivner, its [*sic*] got to be devitalized scar tissue. No way because we use the very same suture to even repair bladder injuries with Dexon. That is as far as I can go."

The appellant objects that Scrivner's recitation of Fair's statement is inadmissible because it is hearsay, but the wisdom of certain exceptions to the bar against hearsay has long been recognized, particularly that exception allowing the use of learned treatises. (6 Wigmore on Evidence secs. 1690, 1691 (Chadbourn rev. 1976).) The Federal Rules of Evidence 703 and 705, adopted by Illinois, contemplate an even more expansive exception for hearsay reasonably relied upon by an expert witness in forming his opinion on the matter at hand. (*Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E.2d 1332, *cert. denied* (1981), 454 U.S. 836, 70 L. Ed. 2d 117, 102 S. Ct. 140.) The Advisory Committee recognized that physicians base their opinions on "information from numerous sources and of considerable variety *** including *** opinions from nurses, technicians and other doctors ***." (Fed. R. Evid. 703, advisory committee note.) There is nothing in the rule or committee notes which requires data to be presented in written form. Unless the court requires him to do so, the expert may testify as to his opinion and inferences without prior disclosure of the data upon which he relies for his views. (Fed. R. Evid. 705.) It is the burden of the cross-examiner to elicit the basis of the expert's opinion. (*Bryan v. John Bean Division of FMC Corp.* (5th Cir. 1978), 566 F.2d 541.) The heart of the inquiry is whether the data made known to the expert is "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject ***." (Fed. R. Evid. 703.) In fact, *Montefusco v. Cecon Construction Co.* (1979), 74 Ill. App. 3d 319, 392 N.E.2d 1103, cited by the appellant, supports this view. There the court said that it was permissible for an expert to base his opinion upon information communicated to him orally by a person who did not testify at trial. The weight to be given to the opinion could be challenged by cross-examination.

In the present case, Scrivner's identification of Fair as chief of urology at Barnes Hospital suggests that information coming from Fair could be reasonably relied upon by obstetricians and gynecologists who must deal with urological problems in their practice. Scrivner further explains that it was the currency of Fair's views which influenced him to disagree with Matingly's article. It does not appear

80

unreasonable that a doctor would rely on up-to-date information in forming his opinions. If, in fact, Scrivner had been unreasonable in relying on Fair as a factor in forming his medical opinion, probing cross-examination could have revealed the unreasonable reliance and affected the weight to be given to Scrivner's opinion.

Were I to conclude, as the majority does, that the admission of Scrivner's testimony was error, I would nevertheless consider it harmless error. During direct examination, Scrivner stated before the jury his opinion that sutures made with Dexon would not have caused Denny's fistula. He explained that his opinion was "based on the record and my experience and other sources" including literature supplied by the makers of the suture and conversation "with eminent people in the field of urology" who used Dexon. Denny did not object to any of the sources of data on which Scrivner relied although they include direct conversations with eminent urologists. At most, Scrivner's statements during cross-examination were cumulative.