JOSEPH ROCK, Plaintiff-Appellant, v. JACK R. PICKLEMAN, Defendant-Appellee.

First District (6th Division)   No. 1—90—0427

Opinion filed February 1, 1991.—Modified on denial of rehearing
June 21, 1991.

370

RAKOWSKI, P.J., specially concurring.

Lisco & Field, of Chicago (Robert F. Lisco, of counsel), for appellant.

Baker & McKenzie, of Chicago (Francis D. Morrissey, J. Patrick Herald, and Michael A. Pollard, of counsel), for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Joseph Rock, filed a medical malpractice suit against defendant, Dr. Jack Pickleman, alleging that defendant negligently administered multiple enemas which caused plaintiff to sustain a heart attack. Upon defendant's motion made the morning of trial, the trial court barred plaintiff from presenting Dr. Milner's expert testimony on the applicable standard of care, then granted defendant's motion for summary judgment after plaintiff's counsel stated that without his expert's testimony, he would be unable to establish the standard of care. Plaintiff filed a post-judgment motion to vacate the summary judgment and for additional time to substitute a new expert. The trial court denied both motions. Plaintiff appeals, contending that barring his expert's testimony and denying his motion to vacate were erroneous rulings.

According to plaintiff's complaint, in early August 1982, he underwent triple bypass heart surgery at Foster McGaw Hospital. A few weeks later, while recovering at home, plaintiff inadvertently swallowed a toothpick, which lodged in his rectum and caused an ischiorectal abscess. On August 23, 1982, plaintiff was again admitted to Foster McGaw Hospital, where defendant performed ischiorectal repair surgery. During plaintiff's postoperative recovery, defendant ordered that plaintiff receive three or four enemas or "until clear." On August 25, 1982, plaintiff received five enemas. While the enemas were being administered, plaintiff developed pain in the left side of his chest and his enzyme level increased, indicating myocardial damage. The complaint alleged that plaintiff suffered a heart attack which resulted from the stress caused by the multiple enemas. Plaintiff was

transferred to the coronary unit on August 26 and remained in the hospital until September 4, 1982.

Plaintiff filed this suit in April 1983. On January 21, 1985, the motion judge ordered plaintiff to disclose his experts by March 20, 1985. After several continuances which allowed plaintiff additional time to disclose his expert, defendant filed a motion on August 3, 1987, to bar plaintiff from calling any expert at trial. By August 26, 1987, however, plaintiff identified Dr. Larry Milner as his expert under Supreme Court Rule 220 (134 Ill. 2d R. 220), and the court entered and continued the motion to bar.

Dr. Milner, a board-certified internist with subspecialties in hematology and oncology, never performed surgery. He had, however, treated many patients with rectal abscesses and regularly treated cardiac patients. In his response to interrogatories, plaintiff indicated Dr. Milner's conclusion:

> "There was a breach of the standard of care by the attending physicians and surgeons caring for the plaintiff herein in that enemas should not have been prescribed for the patient who had suffered a recent myocardial infarction and the plaintiff was already at high risk for another myocardial infarction and a dilation of the rectum is known as an inciting factor for precipitating another myocardial infarction."

At Dr. Milner's deposition in June 1988, he testified that he asked plaintiff's counsel to obtain a surgeon's consultation prior to being deposed and completing his review in order to confirm his preexisting opinion that defendant was negligent. Indeed, according to Dr. Milner, without the surgeon's opinion, he would not have felt qualified to give his own opinion. Dr. Milner specifically stated that he "would not consider [himself] as expert witness with relation to whether, from a surgical standpoint, [tap water enemas] are indicated or not." For that reason, he requested a surgeon's opinion.

Dr. Milner stated that in formulating his opinion, he relied upon a letter to plaintiff's attorney from Dr. Mark Pomerantz. After reviewing plaintiff's hospital records, Dr. Pomerantz, a board-certified surgeon, wrote:

> "It is my considered surgical opinion that it was below the standard of care for the surgeons involved in this case to have administered enemas to this patient immediately after his rectal surgery in view of his recent myocardial infarction. He was already at high risk for another infarct, and dilation of the rectum was a known inciting factor for another infarction."

Dr. George Block, defendant's expert witness, testified at his deposition that defendant acted prudently in ordering enemas and that the enemas had a "miniscule" effect on plaintiff.

When the trial began on December 6, 1989, 18 months after Dr. Milner's deposition, defendant for the first time made a motion *in limine* to bar Dr. Milner from testifying at trial, contending that: the doctor admitted in his deposition that he was not qualified to testify as to an expert surgical standard of care; and Dr. Pomerantz's letter was not a proper basis for Dr. Milner's expert opinion. Plaintiff responded that postoperative care, not surgical care, was the central issue, that Dr. Milner was properly qualified to render an expert opinion, and that Dr. Pomerantz's letter merely confirmed Dr. Milner's own opinion. Plaintiff's counsel also informed the trial court that without the testimony of Dr. Milner, plaintiff's case would be effectively terminated.

The trial court granted defendant's motion *in limine* barring Dr. Milner's testimony. The trial court referred to Dr. Milner as "a surrogate of Dr. Pomerantz" and concluded that all Dr. Milner offered was his opinion that he himself was unqualified and Dr. Pomerantz's opinion that defendant did not meet the applicable standard of care. The trial court apparently agreed that Dr. Milner was qualified as an expert in the treatment of patients with rectal abscesses and cardiac conditions in nonoperative settings.

Plaintiff again reminded the court that without Dr. Milner's testimony, he would not have an expert available to establish the standard of care. Defendant therefore immediately presented a summary judgment motion, supported by Dr. Block's deposition and defense counsel's affidavit. In the absence of any evidence to contradict defendant's expert, the trial court granted summary judgment in favor of defendant.

Plaintiff thereafter moved to vacate the summary judgment order and requested additional time to substitute a new expert. Plaintiff's counsel argued, among other things, that he was taken by surprise by the motion *in limine* filed on the morning of trial 18 months after Dr. Milner's deposition. The trial court denied the motion after a hearing on January 22, 1990.

Plaintiff first contends that the trial court erred in finding Dr. Milner unqualified to render an expert medical opinion on the applicable standard of medical care. Plaintiff asserts that Dr. Milner established at his deposition sufficient experience and knowledge to qualify him as an expert. Plaintiff states that although Dr. Milner is not a surgeon, the disputed medical procedure was not surgical, as the trial

court expressly recognized. Further, plaintiff maintains that although Dr. Milner relied on Dr. Pomerantz's letter, he formulated his own opinion and used the letter merely to "buttress his preexisting opinion." Defendant responds that Dr. Milner's admitted lack of expertise on the issue in the case required the court to find him unqualified, relying on *Landers v. Ghosh* (1986), 143 Ill. App. 3d 94, 491 N.E.2d 950.

We believe that the trial court erroneously concluded that Dr. Milner was unqualified.

■■ In order for an expert medical witness to render an opinion on the proper standards of diagnosis, care and treatment, the party offering the expert must affirmatively establish the expert's qualifications and competence to testify. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 489 N.E.2d 867.) An expert's opinion is allowed on the basis of his knowledge or experience which may aid the trier of fact, and "the weight and value of expert testimony *** largely depends on the foundations of fact and reason upon which the opinion stands." *Skaug v. Johnson* (1975), 29 Ill. App. 3d 238, 242, 330 N.E.2d 265, 268.

■■ Here, the trial court based its decision to bar Dr. Milner's testimony on the doctor's supposed "admission" that he was not qualified. The doctor's statements, however, must not be taken out of context. A complete reading of the deposition shows that Dr. Milner unequivocally questioned the propriety of ordering multiple enemas for plaintiff, who was already at risk for another heart attack. Although Dr. Milner requested a surgeon's input before presenting his opinion, he relied upon the surgeon only to confirm his independently formed opinion. Indeed, he distinctly and unmistakeably expressed his disagreement with defendant's judgment in ordering the enemas, stating at his deposition:

> "My criticism was that an enema was ordered that was not, according to me, necessary. And that since the patient had had recent heart surgery there should have been an awareness that this would have put him at risk of recurrent MI and I felt that the MI that developed did occur from the incident of the enemas. And therefore, I felt that there was a deficiency in the standard of care in ordering the enemas in the first place."

Defendant mischaracterizes the doctor's testimony, attempting to show that Dr. Milner relied entirely upon the surgeon's letter in forming his opinion. However, a thorough reading of Dr. Milner's deposition shows that he plainly and repeatedly articulated his opinion that defendant's care was negligent. Our review of the deposition does not indicate that Dr. Milner was a surrogate of Dr. Pomerantz.

Defendant relies principally on *Landers v. Ghosh* to support his argument that Dr. Milner's alleged "admissions" disqualified him as an expert. In *Landers*, the trial court excluded the testimony of plaintiff's expert, a pathologist, on the reparability of a wound. Based upon the pathologist's statements that he was not qualified to state whether one wound was reparable and another not, the court concluded that the witness did not believe that he was qualified and, as such, was, in fact, not qualified. This court affirmed, concluding that the trial court did not abuse its discretion.

We find *Landers* distinguishable. In *Landers*, the plaintiff imprudently offered a pathologist to testify about a surgical procedure, the likelihood of the reparability of a wound. By contrast, in the present case, plaintiff offered Dr. Milner, an internist, to testify about a nonsurgical procedure. The trial court here explicitly recognized that the alleged malpractice related to the attendant medical care and that the proper standard of care was not surgical. Because the care of an infection, like plaintiff's, is not exclusively within the domain of surgery, a pathologist or internist may be sufficiently qualified to testify on the issue. Unlike this case, in *Landers*, the defendant offered a pathologist to testify as to an obviously surgical procedure, the reparability of a wound.

■ We also believe that Dr. Milner could properly rely on Dr. Pomerantz's letter in forming his opinion. Under Rule 703 of the Federal Rules of Evidence (Fed. R. Evid. 703), as adopted by our supreme court in *Wilson v. Clark* (1981), 84 Ill. 2d 186, 196, 417 N.E.2d 1322, 1327, an expert may rely on data presented to him "outside of court and other than by his perception," so long as it is of a type ordinarily relied upon by experts in the field in forming their opinions. (Fed. R. Evid. 703.) Further, the Federal Advisory Committee's note further recognizes:

> "[T]he rule is designed to broaden the basis for expert opinions beyond that current in many jurisdictions and to bring the judicial practice into line with the practice of the experts themselves when not in court. Thus a physician in his own practice bases his diagnosis on information from numerous sources and of considerable variety, including statements by patients and relatives, reports and *opinions* from nurses, technicians and *other doctors*, hospital records, and X rays." (Emphasis added.) Fed. R. Evid. 703, advisory committee note.

■ We find that the holding in *Melecosky v. McCarthy Brothers Co.* (1986), 115 Ill. 2d 209, 503 N.E.2d 355, is instructive. In *Melecosky*, the trial court excluded the expert testimony of a nontreating

doctor consulted solely to render an opinion at trial because the expert relied in part on plaintiff's unsworn subjective statements about his injuries. The supreme court reversed the trial court's exclusion of the expert's opinions, concluding that because a doctor in his own practice ordinarily relies on a patient's statements, then so too could a testifying expert. The court recognized the value of cross-examination and the role of the jury, stating:

> "[D]efendants would have been free to bring out the fact that [the expert's] opinion was based upon plaintiff's subjective statements and could have suggested to the jury that plaintiff had reason to exaggerate his symptoms. It would have then been up to the jury to decide what weight to give to [the expert's] opinion." (*Melecosky*, 115 Ill. 2d at 216-17, 503 N.E.2d at 358.)

In so deciding, the *Melecosky* court quoted with approval the statement of the circuit court of appeals that " '[g]reat liberality is allowed the expert in determining the basis of his opinions under Rule 703. Whether an opinion should be accepted is not for the trial judge. That is for the finder of fact.' " *Melecosky*, 115 Ill. 2d at 216, 503 N.E.2d at 358, quoting *Mannino v. International Manufacturing Co.* (6th Cir. 1981), 650 F.2d 846, 853.

■ Here, Dr. Pomerantz's statement is similar to the statements in *Melecosky* because both are ordinarily relied upon by doctors in forming opinions. Just as doctors commonly rely upon their patients' statements, doctors frequently consult other doctors, often specialists, and find them reliable in forming opinions. (See *Piano v. Davison* (1987), 157 Ill. App. 3d 649, 672, 510 N.E.2d 1066, 1082 ("Reports and opinions from other doctors are considered facts or data reasonably relied upon by experts in the field").) Moreover, as the committee's note shows, the drafters of Rule 703 explicitly envisioned that a testifying expert would rely on other doctors' opinions. Thus, Dr. Milner's reliance on Dr. Pomerantz's opinion was reasonable and sufficiently trustworthy.

Defendant relies primarily on *Dugan v. Weber* (1988), 175 Ill. App. 3d 1088, 530 N.E.2d 1007, to support his argument that Dr. Pomerantz's letter is not the type of information reasonably relied upon by experts. In *Dugan*, the trial court precluded defendant's expert, Dr. Weil, from relying on the report of another doctor, Dr. Sheinkop, as a basis for his opinion. This court affirmed, concluding that the medical report prepared by Dr. Sheinkop was not of the type normally relied upon by experts in their own practice. Rather, the *Dugan* court wrote that "the reports envisioned by the [supreme] court as provid-

ing reliability were reports made and utilized during the course of medical practice, not reports formed for litigation purposes." *Dugan*, 175 Ill. App. 3d at 1098, 530 N.E.2d at 1013.

We find *Dugan* to be distinguishable for several reasons. First, in *Dugan* the expert at issue, Dr. Weil, relied not only upon another doctor's report, but also upon the doctor's deposition. Unlike a deposition, which is secured solely for litigation purposes, a doctor's brief oral or written consulting opinion may be used simply to assist a doctor in formulating his own diagnosis. In fact, consults by nontreating doctors are so customary that such opinions are sufficiently trustworthy and credible to make reliance reasonable. Further, although informal oral consults may be more common, a brief, written consult does not differ in substance from an oral consult. The writing itself may, in fact, enhance the opinion's reliability.

Second, in *Dugan*, the expert doctor relied upon another doctor's report made after a physical examination of plaintiff and a transcript of the doctor's subsequent deposition. By contrast, Dr. Milner relied only upon a five-sentence letter from Dr. Pomerantz.

Third, in *Dugan*, before trial, Dr. Weil indicated at his deposition that he had no opinion on plaintiff's disability or on the findings in Dr. Sheinkop's report. This court noted that the expert's later use of Dr. Sheinkop's report would be inconsistent with his deposition statement. Unlike the expert in *Dugan*, Dr. Milner at his deposition unambiguously and without hesitation stated his opinion as to defendant's negligence and openly indicated his reliance upon and agreement with Dr. Pomerantz. Thus, the *Dugan* court's concern about the expert's inconsistent statements is absent here. The *Dugan* court was also troubled by the fact that the defendant originally engaged Dr. Sheinkop as his expert and later refused to produce him, despite numerous opportunities to do so. The court believed that Dr. Sheinkop's report was, in fact, unfavorable to defendant's position. Such situation also distinguishes *Dugan* from this case.

Nor do we believe that *Denny v. Burpo* (1984), 124 Ill. App. 3d 73, 463 N.E.2d 1074, requires us to conclude that Dr. Milner could not reasonably rely upon Dr. Pomerantz's letter. In *Denny*, on cross-examination, plaintiff's counsel asked defendant's expert witness, Dr. Scrivner, whether he agreed with statements published in a medical journal about the origin of the medical condition at issue. Dr. Scrivner responded that several days before he "posed this very case to [Dr. Fair, the head of the hospital urology department]," and then recited the specifics of Dr. Fair's contrary opinion. (124 Ill. App. 3d at 77.) The *Denny* court, in a split decision, found Dr. Scrivner's report of

Dr. Fair's statement inamissible hearsay because it related to the origin of plaintiff's specific claim, not the journal article, and was "unresponsive" to the question asked. We find *Denny* distinguishable. Unlike plaintiff in *Denny*, who did not learn of Dr. Scrivner's reliance on Dr. Fair's opinion until cross-examination, defendant here knew about Dr. Pomerantz's opinion 18 months before trial was to begin. He, therefore, had extensive access through discovery to information comprising the foundation of Dr. Milner's opinion and would have had the ability to challenge that foundation during cross-examination. The extent to which defendant actually availed himself of discovery measures is of no import. We also believe that the supreme court's decision in *Melecosky v. McCarthy Brothers Co.* (1986), 115 Ill. 2d 209, 503 N.E.2d 355, effectively rejects the holding of *Denny*.

In sum, we believe the trial court erred in precluding Dr. Milner from testifying as an expert because he relied on Dr. Pomerantz's opinion in forming his own opinion as to defendant's negligence. We thus reverse the trial court's order granting defendant's motion *in limine*.

■ It follows that the summary judgment order must also be reversed. The trial court granted summary judgment based upon defendant's expert's deposition and the complete lack of any expert testimony by plaintiff to contradict defendant's expert. If the trial court had allowed Dr. Milner's testimony, as we have concluded that it should have, the experts' conflicting testimony on the standard of care would have adequately established reasonability on a key issue of fact sufficient to preclude summary judgment for defendant. *Mahrenholz v. County Board of School Trustees* (1984), 125 Ill. App. 3d 619, 466 N.E.2d 322.

Although in view of the above holding, it is not necessary to consider plaintiff's other contention on appeal, we shall briefly discuss the issue. Plaintiff maintains that the trial court erred in denying his motion to vacate the summary judgment in order to give him time to obtain another expert opinion. Plaintiff filed the timely motion to vacate two weeks after the court granted summary judgment in favor of defendant.

This case is unlike many other decided cases where summary judgment was granted after plaintiff failed to offer an opinion critical of defendant's care despite ample time and numerous continuances. (See *Brandeis v. Salafsky* (1990), 206 Ill. App. 3d 31, 563 N.E.2d 1026; *Smith v. South Shore Hospital* (1989), 187 Ill. App. 3d 847, 543 N.E.2d 868; *Gordon v. Nasr* (1989), 182 Ill. App. 3d 964, 538 N.E.2d 843; *Bennett v. Raag* (1982), 103 Ill. App. 3d 321, 431 N.E.2d 48.)

Here, plaintiff retained Dr. Milner well in advance of trial and submitted him for deposition 18 months before trial. Moreover, as previously noted, Dr. Milner's deposition testimony unambiguously criticized defendant's care.

■■ As defendant correctly states, a summary judgment motion may be brought at any time (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(b)), even on the first day of trial. However, plaintiff's surprise at having to defend Dr. Milner's qualifications at the start of trial was understandable given that defendant knew for so long about Dr. Milner's reliance on Dr. Pomerantz without ever indicating an objection. Therefore, plaintiff could not reasonably anticipate Dr. Milner's disqualification and after his timely request should have been allowed additional time to obtain a new expert.

Plaintiff adequately demonstrated that, given a reasonable amount of time, he would be able to present such expert medical testimony. It is evident that he could obtain the requisite expert opinion either through Dr. Milner or Dr. Pomerantz, possibly even offering Dr. Pomerantz as that expert witness.

We cannot see sufficient prejudice to defendant in this case to justify overriding plaintiff's right to proceed to trial on the merits. We believe that presented with the motion to vacate, the trial court should have balanced the interests of the parties by fashioning an order allowing plaintiff a reasonable period of time to obtain a new expert.

For the foregoing reasons, the judgment of the circuit court of Cook County barring Dr. Milner from testifying and granting summary judgment in favor of defendant is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

LaPORTA, J., concurs.

PRESIDING JUSTICE RAKOWSKI, specially concurring:

I concur, for reasons set forth in the majority opinion, that Dr. Milner was qualified to testify as an expert with respect to a post-operative standard of care. For this reason I agree that the motion *in limine* should have been denied.

Where the majority and I differ is with respect to whether Dr. Milner could properly rely upon and utilize Dr. Pomerantz's letter in the formulation of his opinion. I respectfully submit that he could not. While it is true that Dr. Milner had an opinion that there was a

breach of the applicable standard of care in a post-operative setting, he had no opinion whatsoever as to whether defendant's actions were proper in a surgical setting; he relied exclusively upon the Pomerantz letter. In effect, rather than utilize the Pomerantz letter in the formulation of his own opinion, Dr. Milner is expressing Dr. Pomerantz's opinion with respect to an area (surgery) in which he (Milner) has no expertise. It is for this reason that the Pomerantz letter is not the type of outside data "reasonably relied upon by experts in the particular field in forming their opinions." See Fed. R. Evid. 703; *Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E.2d 1322.

Thus, while I agree that a doctor may consider opinions of other doctors in the formulation of his own opinion, he should not be allowed to adopt another doctor's opinion as his own with respect to an area in which he has no expertise. Contrary to the majority, I find nothing in *Melecosky v. McCarthy Brothers Co.* (1986), 115 Ill. 2d 209, 503 N.E.2d 355, or Federal Rule 703 that would sanction such a result. More applicable to the present situation is the case of *Denny v. Burpo* (1984), 124 Ill. App. 3d 73, 463 N.E.2d 1074. There the court held that a consulting expert's opinion of a case could not be characterized as information of the type "reasonably relied upon" in the field because the consulting expert was speaking with regard to a specific case, not from general medical knowledge. (124 Ill. App. 3d at 77-78.) It is my opinion that Dr. Milner's reliance upon and utilization of the Pomerantz letter would amount to inadmissible hearsay in accord with *Denny*.