PEABODY COAL COMPANY, Appellant, v. THE INDUSTRIAL COMMIS-
SION *et al.* (Gary B. Chalacoff *et al.*, Appellees).

Fifth District (Illinois Workers' Compensation Commission Division)
No. 5—04—0359WC

Opinion filed February 2, 2005.

Kevin M. Hazlett, P.C., of Swansea, for appellant.

Culley & Wissore, of Raleigh, for appellee.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

On May 5, 1998, claimant, Gary B. Chalacoff, filed an application for adjustment of claim pursuant to the Workers' Occupational Diseases Act (Act) (820 ILCS 310/1 through 27 (West 1996)), seeking benefits from employer, Peabody Coal Company. After a hearing, an arbitrator denied claimant benefits. On review, the Industrial Commission (Commission)[1] reversed the arbitrator's decision finding claimant "sustained his burden in proving that he was exposed to an occupational disease arising out of and in the course of his employment with [employer]." The Commission awarded claimant permanent partial disability (PPD) benefits in the sum of $361.33 per week for a period of 200 weeks, representing 40% loss of a man as a whole. See 820 ILCS 310/7 (West 1996). Employer sought judicial review of the Commission's decision in the circuit court of Christian County, which confirmed the Commission's decision. Employer appeals, arguing that (1) the Commission's finding that claimant suffered an occupational disease is against the manifest weight of the evidence, (2) the Commission's finding that claimant proved he suffered disablement within two years after the last day of the last exposure to the hazards of the occupational disease, as required by sections 1(e) and 1(f) of the Act (820 ILCS 310/1(e), (f) (West 1996)), is against the manifest weight of the evidence, (3) the Commission's finding that claimant is permanently partially disabled to the extent of 40% is against the manifest weight of the evidence, and (4) the Commission erred by considering the testimony of a medical doctor who relied upon a report by his consulting radiologist/B reader in forming his opinion. We affirm the circuit court's order confirming the Commission's decision.

Claimant worked as a coal miner for approximately 37 years during which time he was exposed to rock, silica, and coal dust. Claimant testified that he last coal mined on August 2, 1996, when employer closed the mine and laid claimant off from work. Although claimant had sufficient seniority to transfer to another mine, he believed that he would have to work underground and a company doctor advised

---

[1]Effective January 1, 2005, the name of the Industrial Commission was changed to the "Illinois Workers' Compensation Commission." However, because the Industrial Commission was named as such when the instant cause was originally filed, we will use this name for purposes of consistency.

claimant that he should not work underground. Claimant had difficulty breathing and "bad knees." Claimant testified that he spoke with employer on approximately February 27, 1997. Employer told claimant "they had a job \*\*\* down below." In response, claimant referenced a letter "from the Peabody Mine doctor saying I couldn't go down below anymore." Claimant retired on March 1, 1997.

Claimant testified that he first noticed breathing problems in 1974, while drilling. Claimant became covered in coal dust and would "cough all that stuff up when [he] came up at night." Claimant continued to experience breathing problems. Claimant smoked since age 20, averaging 15 cigarettes per day. He quit smoking from January 1990 to February 1995.

Dr. Stephen Randag is a primary care physician and has treated claimant for more than 20 years. Dr. Randag's notes, dated August 26, 1981, through March 2, 2001, make multiple references to his diagnosis of claimant with chronic bronchitis from smoking. At his deposition, Dr. Randag stated that claimant's occupational exposures would also have been a causative factor in his chronic bronchitis.

Dr. William Houser testified on December 4, 2000, that he is a board-certified pulmonary specialist. Dr. Houser examined claimant on February 27, 1998, at the request of claimant's attorney. Claimant complained of a chronic cough with sputum production for approximately 27 years. Claimant also suffered dyspnea upon walking three to four blocks on level ground, or climbing two flights of stairs. Claimant reported that he experienced wheezing, especially at night. On physical examination, Dr. Houser noted late inspiratory rales at both bases which did not clear with deep breathing or coughing. Pulmonary function testing showed mild to moderate airway obstruction. Both Dr. Houser and his consulting radiologist/B reader read claimant's chest X ray as positive for coal workers' pneumoconiosis (CWP), category 1/1. Dr. Houser stated that claimant "has sufficient occupational exposure \*\*\* and chest roentgenographic findings appropriate for the diagnosis of [CWP], category 1/1." Further, Dr. Houser offered that claimant's CWP "[is] related to each and every exposure to coal and rock dust that [claimant] experienced during his 37 years of coal mine employment." In addition, Dr. Houser stated that claimant suffers from chronic obstructive pulmonary disease and chronic bronchitis, secondary to smoking and coal and rock dust exposure. Dr. Houser concluded that claimant suffers from a permanent impairment of function which makes him unable to perform heavy manual labor and leaves him disabled from mining because any additional dust exposure would aggravate claimant's condition.

Dr. Peter G. Tuteur, a physician board certified in internal

medicine and pulmonary disease, examined claimant on August 18, 2000, at employer's request. Dr. Tuteur did not believe claimant suffered from CWP "or any other coal mine induced disease process." Although Dr. Tuteur believed that claimant's cough was due to smoking, he agreed that the long-term inhalation of coal mine dust can aggravate chronic bronchitis.

After the hearing, the arbitrator denied claimant benefits. On review, the Commission reversed the arbitrator's decision finding that claimant "sustained his burden in proving that he was exposed to an occupational disease arising out of and in the course of his employment with [employer]." The Commission awarded claimant PPD benefits in the sum of $361.33 per week for a period of 200 weeks, representing 40% loss of a man as a whole. Employer sought judicial review of the Commission's decision in the circuit court of Christian County which confirmed the Commission's decision. This appeal followed.

Employer first argues that the Commission's finding that claimant suffered an occupational disease is against the manifest weight of the evidence.

■ "[I]t is the province of the *** Commission to weigh the evidence and draw reasonable inferences therefrom in the first instance, and we will not overturn its findings simply because a different inference could be drawn." *Niles Police Department v. Industrial Comm'n*, 83 Ill. 2d 528, 533-34, 416 N.E.2d 243, 245 (1981). Interpretation of medical testimony is particularly within the province of the Commission. *A.O. Smith Corp. v. Industrial Comm'n*, 51 Ill. 2d 533, 536-37, 283 N.E.2d 875, 877 (1972). "Before a reviewing court may overturn a decision of the [Commission], it must find that the award was contrary to law or that the Commission's factual determinations were against the manifest weight of the evidence." *Freeman United Coal Mining Co. v. Industrial Comm'n*, 188 Ill. 2d 243, 245, 720 N.E.2d 1063, 1065 (1999).

■ In this case, Dr. Houser concluded that claimant suffered from CWP and that claimant's CWP was causally related to his exposure to coal dust. Dr. Houser based his opinion on "occupational exposure of approximately 37 years" and chest X rays revealing opacities "in both upper and right mid lung zones," and indicating a category 1/1 CWP. In addition, Dr. Houser stated that claimant suffers from chronic obstructive pulmonary disease and chronic bronchitis, secondary to smoking and coal and rock dust exposure. Dr. Houser concluded that claimant suffers from a permanent impairment of function which makes him unable to perform heavy manual labor and leaves him disabled from mining because any additional dust exposure would aggravate claimant's condition. The Commission found Dr. Houser to be

the most credible medical witness. Further, the Commission noted Dr. Houser's opinion was "in accord with the statutory presumption found in *** the *** Act." See 820 ILCS 310/1(d) (West 1996). In addition, the Commission noted that Dr. Tuteur "essentially concluded that coal dust can cause chronic bronchitis symptoms and agreed that long term inhalation of coal mine dust can aggravate chronic bronchitis." The Commission's finding that claimant suffered an occupational disease is not against the manifest weight of the evidence.

Employer next argues the Commission's finding that claimant proved he suffered disablement within two years after the last day of the last exposure to the hazards of the occupational disease, as required by sections 1(e) and 1(f) of the Act (820 ILCS 310/1(e),(f) (West 1996)), is against the manifest weight of the evidence. Whether a claimant has provided sufficient evidence of disablement is a question of fact for the Commission, and its decision in this regard will not be reversed unless it is against the manifest weight of the evidence. *Freeman United Coal Mining Co. v. Industrial Comm'n,* 263 Ill. App. 3d 478, 486, 636 N.E.2d 77, 82 (1994).

In this case, claimant's last day of exposure was the last day of his employment, August 2, 1996. Claimant testified he first experienced breathing problems in approximately 1974. A company doctor advised claimant that he should not work underground. Claimant had difficulty breathing and "bad knees." In multiple entries dated August 26, 1981, through March 2, 2001, the medical records show claimant diagnosed with chronic bronchitis. Although the medical records attribute claimant's chronic bronchitis to smoking, Dr. Randag stated that claimant's occupational exposures would also have been a causative factor in his chronic bronchitis. Dr. Houser examined claimant on February 27, 1998, and concluded that claimant suffered from (1) CWP caused by exposure to coal and rock dust, and (2) chronic obstructive pulmonary disease and chronic bronchitis caused in part by exposure to coal and rock dust. He concluded that claimant is disabled from mining. The evidence supports the Commission's conclusion that the claimant's disablement occurred within the statutory two-year period.

Employer next argues that the Commission's finding that claimant is permanently partially disabled to the extent of 40% is against the manifest weight of the evidence.

"A determination of the extent of a claimant's disability is a question of fact, and the Commission's decision will not be set aside unless it is against the manifest weight of the evidence." *Freeman,* 263 Ill. App. 3d at 485, 636 N.E.2d at 82. As previously set forth, when conflicting medical evidence is presented, it is for the Commission to determine which testimony will be accepted. Here, claimant testified

that he started noticing breathing problems as early as 1974, and that his problems have continued over time and interfere with his normal activities. Claimant testified that as a result of his breathing problems, he can only walk three to four blocks on level ground, or climb two flights of stairs. Under these circumstances, the Commission's award of 40% is not against the manifest weight of the evidence.

■ Employer next argues the Commission erred by considering the testimony of Dr. Houser because he relied upon a report by his consulting radiologist/B reader in forming his opinion. The B reader read claimant's chest X ray as positive for CWP, category 1/1. Employer relies on *Dugan v. Weber*, 175 Ill. App. 3d 1088, 530 N.E.2d 1007 (1988), asserting "[the] report *** was prepared in anticipation of litigation" and, therefore, was not trustworthy. Claimant responds that employer waived any claim of error by failing to assert it before the Commission. See *Fitts v. Industrial Comm'n*, 172 Ill. 2d 303, 308, 666 N.E.2d 4, 6 (1996) ("In reviewing a decision of the *** Commission, a court may consider only the record and arguments that were before the Commission").

In *Rock v. Pickleman*, 214 Ill. App. 3d 368, 375, 574 N.E.2d 682, 686-87 (1991), the court that decided *Dugan* limited that case to its unique facts and reversed the trial court's preclusion of the expert's testimony because he relied on another nontreating doctor's opinion:

> "Here, Dr. Pomerantz's statement is similar to the statements in *Melecosky* [*v. McCarthy Brothers Co.*, 115 Ill. 2d 209, 503 N.E.2d 355 (1986),] because both are ordinarily relied upon by doctors in forming opinions. Just as doctors commonly rely upon their patients' statements, doctors frequently consult other doctors, often specialists, and find them reliable in forming opinions. [Citation.] Moreover, as the Committee's note shows, the drafters of Rule 703 explicitly envisioned that a testifying expert would rely on other doctors' opinions." *Rock*, 214 Ill. App. 3d at 375, 574 N.E.2d at 686-87.

In this case, Dr. Houser testified that the B reader's interpretation was the type of data he customarily relies on in the treatment of his patients. The Commission did not err by considering the testimony of Dr. Houser because he relied upon a report by his consulting radiologist/B reader in forming his opinion.

We affirm the circuit court's order confirming the Commission's decision.

Affirmed.

HOFFMAN, CALLUM, HOLDRIDGE, and GOLDENHERSH, JJ., concur.