THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DONALD EUGENE GROTH, JR., Defendant-Appellant.

Fourth District    No. 17144

Opinion filed April 8, 1982.

Daniel D. Yuhas and Jeffrey D. Foust, both of State Appellate Defender's Office, of Springfield, for appellant.

Edmond H. Rees, State's Attorney, of Carlinville (Robert J. Biderman and James K. Horstman, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

On March 13, 1981, following a jury trial in the circuit court of Macoupin County, defendant, Donald Groth, was convicted of murder

and robbery. He was subsequently sentenced to 40 years' imprisonment for murder and 7 years' imprisonment for robbery, the sentences to run concurrently. On appeal, defendant maintains the trial court erred in (1) allowing testimony from a crime scene technician that only one person was in the room with the decedent at the time of his death; and (2) allowing a coroner to testify to the time of death based solely on the degree of rigor mortis in the corpse.

Because of the strength of the evidence, we find no reversible error to have resulted from the admission of the questioned testimony. As no alibi testimony was offered, the exact time of the victim's death was not of significance. Accordingly, we need not pass upon the propriety of the testimony of the coroner. Similarly, although we deem the admission of the opinion testimony of the crime scene technician to have been error, the testimony was of such minor significance as to make the error harmless.

The parties stipulated to the fact that the victim was a homosexual. His body was found on a bed in his parents' home in Virden, approximately 30 miles south of Springfield. The victim's parents found his body the evening of May 18, 1975, at about 5:30 p.m., clad only in undershorts. A police officer testified that, at the time of his arrest, defendant claimed he did not know decedent and had never even been in Virden. Yet, testimony was presented at trial of eyewitnesses who claimed to have seen defendant and decedent together, in a tavern in Springfield, between 11 and 11:30 p.m. on the evening of May 17, 1975. In addition, a former employer of decedent identified defendant as a person he had seen accompanying decedent while the latter was purchasing beer at a grocery store on the same evening. Further, a fingerprint expert testified that fingerprints, found in the home where decedent's body was discovered and in decedent's car located the morning of May 18, 1975, in a parking lot in Springfield, were defendant's fingerprints. Finally, a friend of defendant testified that in the months after the decedent's death she saw defendant with a gun which she described as being similar to one depicted in a photograph shown to her. This photograph had, in turn, been identified by the victim's father as being of the same caliber and otherwise similar to a gun found to be missing at the time decedent's body was found.

The most damaging testimony came from defendant's ex-wife, D'Ann Marsh. She testified that on the night before the decedent's body was found, defendant came to her apartment carrying a beer stein, two guns and other items. The beer stein had some change in it. Ms. Marsh described the beer stein as similar to that depicted in a photograph shown to her. The photograph had been identified as that of a stein which decedent's mother testified had been missing from their home at the time

the body was found. The decedent's parents had also testified that the beer stein was full of change prior to its being taken. Ms. Marsh further stated that defendant smoked Kool cigarettes. Evidence was introduced that a package of Kool cigarettes was found in the living room of decedent's parents' home at the time the body was found.

Ms. Marsh also testified to a conversation she had with defendant a few months after decedent's death. They were discussing whether they should resume their relationship. She testified she then told defendant she could not live with a person who had killed somebody else. She said he responded that he would "not kill anybody else" and "what happened in Virden would not happen again." Finally, Ms. Marsh testified that later, during an argument, defendant stated, "he would kill me just like he killed the guy in Virden."

Although Ms. Marsh was impeached by evidence that at the time of trial she was in dispute with defendant over custody of their children, her testimony was not otherwise refuted.

In considering the propriety of the purported expert testimony in regard to the number of people present at the time of decedent's death, we need not decide whether the subject was a proper one for testimony of an expert. There was no showing the so-called crime scene technician had any expertise on the subject.

■■ The party offering the expert has the burden of establishing the expert's scientific, technical, or other special knowledge. (E. Cleary and M. Graham, Handbook of Illinois Evidence §702.2, at 359 (3d ed. 1979).) "That the defendant had an opportunity to cross-examine [the expert] as to his qualifications therefore did not eliminate or in any way reduce the State's burden of establishing those qualifications." *People v. Park* (1978), 72 Ill. 2d 203, 209, 380 N.E.2d 795, 798.

■■ In the instant case, the only foundation laid for the crime scene technician's expertise was that he had been a crime scene technician for nine years and that he had spent five hours examining the scene when the deceased's body was found. He did not testify as to his training, background, the number of crime scenes he had examined, or the procedures he used to make the determination as to the number of people present at the time of the murder. In addition, no evidence was offered to show what field of expertise would be required to make such a determination.

■■ We agree with defendant that the admission of the opinion evidence was error. Nevertheless, we find the admission of the testimony to have been harmless since his testimony would have virtually no effect on the outcome of the trial. Even if there were in fact only two persons present at the time of the murder, that alone would not necessarily imply the

defendant was present. Nor would the fact that more than two persons were present necessarily exclude defendant or make his responsibility for the murder substantially less likely.

For the reasons stated, we affirm.

Affirmed.

MILLS and LONDRIGAN, JJ., concur.