THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES KANE, Defendant-Appellant.

Fourth District   No. 4—91—0485

Opinion filed December 31, 1991.

378

Michael J. Zopf, of Reno, O'Byrne & Kepley, P.C., of Champaign, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Kenneth R. Boyle, Robert J. Biderman, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

After a jury trial in Champaign County circuit court, defendant, James T. Kane, was convicted of improper lane usage on a one-way street (Ill. Rev. Stat. 1989, ch. 95½, par. 11—708(b)) and driving under the influence of alcohol (DUI) (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501(a)(2)). He was sentenced to 24 months' conditional discharge and 14 days in the Champaign County Correctional Center, and ordered to perform 200 hours of community service. Defendant was also ordered to receive 10 hours of alcohol remedial education, 20 hours of outpatient alcohol treatment, and to attend three Alcoholics Anonymous meetings per week for 12 weeks. Defendant's incarceration was stayed pending appeal.

He appeals his DUI conviction. He argues the trial court abused its discretion in denying him an opportunity to present an expert's testimony about his blood-alcohol level when he was arrested for DUI. We disagree and affirm.

On February 23, 1991, at approximately 2:45 a.m., defendant was stopped by police after he turned his vehicle and drove the wrong way on a one-way street in Champaign. Ted Turner, a University of Illinois police officer, testified that when he approached defendant's vehicle, he smelled alcohol on defendant's breath. He also observed defendant's eyes were glassy and somewhat bloodshot, and his speech was slightly slurred. Defendant initially denied he had been drinking, but later admitted he had consumed several drinks several hours earlier. When defendant exited the vehicle, Officer Turner noted defendant leaned on his vehicle to balance himself.

According to Officer Turner, defendant experienced difficulties while performing two coordination tests. The tests administered to defendant were the walk-and-turn test and the one-legged stand test. Three times during the walk-and-turn test, defendant could not maintain heel-to-toe contact, and on one occasion he counted out an incorrect number of steps. Officer Turner also observed defendant had difficulty balancing himself. During the one-legged stand test, defendant's balance was poor, he was unable to count in sequence, and he put his foot down three times by the time he reached the count of 1017—the test requires the person being tested to hold up one foot while counting from 1001 to 1030. Although on cross-examination Officer Turner agreed defendant did not fall down, stumble, or need help in standing or walking, he characterized defendant's imbalance as "greater than normal." Officer Turner concluded defendant was under the influence of alcohol and arrested him. Defendant told Officer Turner he would take the breathalyzer test.

Another University of Illinois police officer, Mike Kurlakowsky, testified he was called to defendant's traffic stop to assist Officer Turner. His testimony corroborated Officer Turner's testimony regarding defendant's difficulty in balancing himself. Officer Kurlakowsky described defendant's balance as slightly off while he performed the walk-and-turn test. He characterized defendant's balance during the one-legged stand test as very poor. He too, agreed defendant did not require help in standing and defendant never fell. Despite this, he, too, thought defendant was under the influence of alcohol.

Sharon Little, a Champaign County correctional officer and a certified breathalyzer-test operator, testified she was called about 3 a.m. to administer a breath test to defendant. She explained to defendant a properly conducted breath test cannot be performed before observing the party for 20 minutes during which the party cannot eat, smoke, drink, vomit, or belch. She began the 20-minute observation period of defendant. Ten minutes into the observation period, defendant informed her he had belched. She started the observation period over. Fifteen minutes later, however, defendant again informed her he had belched. She did not see defendant belch on either occasion. After defendant said he had belched a second time, Officer Little told him he was not cooperating with the testing procedure. She concluded his actions represented a refusal to take the breath test. Officer Little agreed with defense counsel's statements that defendant never fell off his chair nor exhibited any strange behavior and he did not cry or swear during the observation period. She concluded defendant was

under the influence of alcohol because his eyes were glassy, he smelled of alcohol, and he was uncooperative.

During the defense case, University of Illinois police officer Mike Kurlakowsky was examined anew. Officer Kurlakowsky explained Laura Canham, the passenger in defendant's vehicle, had remained at the scene to drive defendant's car home. He denied telling Canham he had not smelled alcohol on defendant's breath. He explained he had not noted an alcoholic smell on defendant's breath, because during the testing and communicating with defendant, he was either to the side of or behind defendant.

Defendant's roommate, Steve Goldman, a 20-year-old University of Illinois student, testified he and defendant played a drinking game the evening of February 22, 1991. Goldman testified defendant drank three to four beers during the game, which lasted from 8 p.m. until 9:45 p.m. Defendant took a shower and he, Goldman, and others went out to bars at 10:20 p.m. Goldman stated each of them bought a quart of beer when they reached a bar called "Cochran's." According to Goldman, they stayed there until midnight and defendant spent 80% of his time dancing. At midnight, he and defendant proceeded to another bar called "O'Malley's" to play foosball, a table soccer game which Goldman characterized as requiring a great deal of skill and coordination to play. Neither he nor defendant consumed alcohol while at O'Malley's. They went home at 1 a.m. Defendant was drinking another beer at home when Goldman went to bed around 1:30 a.m. Before retiring to bed, Goldman talked with defendant about the foosball game and their evening. Goldman stated he knew when someone, including defendant, was under the influence of alcohol. Common characteristics of someone in this state, according to Goldman, are slurred speech, lack of coordination, and somewhat incoherent speech. Although he agreed defendant drank three to four beers before leaving home, and a quart of beer at Cochran's, Goldman did not think defendant was under the influence of alcohol because he had been acting normally, talking intelligently, and had no difficulty with his balance.

Laura Canham, a 21-year-old University of Illinois student, was the passenger in defendant's vehicle the night defendant was arrested. She testified defendant arrived at her sorority house at approximately 2:20 a.m. to pick her up. She had called him because she could not sleep after seeing a movie which frightened her. Canham had not consumed any alcohol that evening. She spoke with defendant on the phone for 15 minutes before he came to pick her up. According to Canham, defendant spoke clearly on the phone and showed no co-

ordination problems negotiating the stairs to her sorority house. He was also able to parallel park his vehicle and had no difficulty shifting his manual transmission. Canham testified defendant performed both field coordination tests properly. Defendant walked heel-to-toe and took the number of steps which he was asked to take without loss of balance or walking unusually. She noted his knees were shaking slightly, but explained this was because he was wearing shorts and he was cold. She noted during the one-legged stand test, defendant put his foot down after reaching the count of 12 or 15. She said his ankle buckled slightly. When the officer told defendant to try the test again, he lasted slightly longer before dropping his foot again. Canham did not think defendant was under the influence of alcohol. She did not smell alcohol on defendant's breath or notice him slurring his speech. In addition, she testified she did not think his eyes were glassy. However, she did not look at his eyes.

Defendant testified that on February 22, 1991, he drank a lite beer around noon with his macaroni and cheese lunch. He drank another lite beer at 5 p.m. while cleaning his house. At 7 p.m. he drank another can of lite beer and ate the remaining macaroni and cheese for dinner. He drank a glass of beer with a higher alcohol concentration than a lite beer shortly after 7 p.m. when he went out with a friend and the friend's uncle. Defendant stated, as his roommate had testified, he drank three to four beers while he played the drinking game with Goldman between 8 p.m. and 9:45 p.m. Defendant agreed he bought a quart of beer at Cochran's about 10:40 p.m., but stated he only drank a fourth of it because someone took the quarts from the table while defendant and his friends were dancing. Defendant then bought a genuine draft beer around 11 p.m., but stated he drank only about four-fifths of it. At around 11:30 p.m. he bought another beer, but drank only about five ounces of it before they decided to leave to play foosball elsewhere. Defendant stated he had no difficulty dancing while at Cochran's, and did not feel the alcohol which he had consumed was affecting him. Defendant testified that while at O'Malley's neither he nor his roommate purchased alcoholic drinks. He also felt they played foosball quite well.

According to defendant, he did not finish the beer he opened when they returned home at 1 a.m. February 23. He was tired of drinking. When he went to pick Laura Canham up he parallel parked his vehicle without difficulty. Defendant described the pavement where he performed the coordination tests as having a grade of 4 to 5 inches along a distance of approximately 8 to 10 feet. He indicated he

was very cold and he had weak ankles resulting from high school sports.

According to defendant, his belches during the breath test observation period were involuntary. When he gets nervous and upset, his stomach gets knotted and he vomits sometimes and most often he belches. Defendant denied he was under the influence of alcohol. On cross-examination, although he agreed he had approximately 11 drinks during a 10-hour period, defendant denied his alcoholic consumption affected his coordination.

Defendant's mother, Bonita Kane, testified defendant phoned her from the police station after his arrest and after the terminated breath analysis. She described defendant's speech over the phone as normal for him and explained defendant had a slight lisp which was caused by orthodontal work and from wearing a retainer after this work. She would not, however, characterize his speech as slurred. She stated defendant speaks slowly when he wants to be certain someone understands what he is saying. Defendant told his mother he did not refuse to take the breath test. Mrs. Kane also stated her son has a weak stomach which causes him to either vomit or to belch involuntarily when he becomes upset. She also explained her son had weak ankles from playing sports in high school. In addition, she said her son's eyes get bloodshot when he is extremely tired.

Defendant sought to introduce expert testimony about his blood-alcohol concentration the night he was arrested. Outside the presence of the jury, Dr. Roy Schenk testified about his qualifications and method for determining defendant's blood-alcohol level. Dr. Schenk testified he was a research chemist. He had done his undergraduate work at Purdue University and graduated in 1951 with a major in soil chemistry. He did his graduate work at Cornell University in New York, where he obtained his Ph.D. in 1954 in organic chemistry. He testified he taught general, analytical, organic, and biochemistry at the college level. He has been employed by Bio-Energetics Incorporated for 12 years as a consultant and expert witness in DUI cases. His prior expert testimony in court involved examining instrumentation used for breath and blood-alcohol testing. His evaluations dealt primarily with the accuracy of these instruments. Dr. Schenk testified he applies chemistry to solve problems related to chemical analysis, toxicology, and calculation of breath-alcohol concentration in DUI cases.

Dr. Schenk would testify about what he called defendant's blood-alcohol curve. A curve is calculated by considering the amount of alcohol a person drank; his size, height, weight, and sex, and the amount

of food the person has eaten; the amount of water in his body; and whether the person had taken medication. He had testified as an expert in 125 DUI cases in the past 10 years. He stated he had obtained the necessary information from defendant to construct defendant's alcohol curve on February 23, 1991. He also explained his results were dependent on information provided by defendant. Dr. Schenk used a mathematical formula developed in approximately 1930 to compute alcohol curves. However, he had adapted the formula to fit his needs. He also stated this formula was commonly used by other professionals in his field.

During the offer of proof, defense counsel stated Dr. Schenk would testify defendant's blood-alcohol level the morning of February 23 was .057. She further stated Dr. Schenk would not explain this measurement further, nor would defendant request a jury instruction about the significance of the measurement.

The State asked Dr. Schenk what formal education he received to enable him to establish a blood-alcohol level by evaluating individual characteristics such as a person's metabolism rate, the amount of water in a person's body, a person's bone structure and the amount of fat in a person's body. He responded he had not had a great deal of formal training, but explained this evaluation only required applying basic chemistry.

The State objected to considering Dr. Schenk as an expert because Schenk stated that being able to formulate an alcohol curve required only a general chemistry background. It argued Schenk was not an expert. In addition, it objected to the speculative nature of an alcohol curve and contended Schenk's testimony was not relevant. The trial court ruled Dr. Schenk's testimony was irrelevant and a proper foundation was not laid because of assumptions he had to make to arrive at defendant's alcohol curve.

■ A court of review will not disturb a trial court's ruling regarding admissibility of evidence absent a clear abuse of discretion. (*People v. Enis* (1990), 139 Ill. 2d 264, 281, 564 N.E.2d 1155, 1161; *People v. Ward* (1984), 101 Ill. 2d 443, 455-56, 463 N.E.2d 696, 702.) Defendant argues the court abused its discretion by restraining him from fully defending himself. He contends his defense was substantially prejudiced because testimony he presented about his alcohol consumption, combined with the expert testimony which was not permitted, would have established he had no motive to belch to avoid the breath test because he was not under the influence of alcohol.

However, defendant presented testimony by his friends Laura Canham and Steve Goldman. Each testified defendant was not under

the influence of alcohol on February 23. Defendant's mother also testified defendant did not speak as if he were under the influence of alcohol when she spoke to him from the police station. His mother provided additional testimony about her son's weak ankles, bloodshot, tired eyes, and his tendency to belch when nervous. In addition, defendant testified he was not under the influence of alcohol February 23. This evidence supported defendant's argument that he was not under the influence of alcohol the morning in question. Defendant was provided an opportunity to attack each facet of the State's case against him. He was not substantially prejudiced by the exclusion of Dr. Schenk's testimony.

■ In addition, the trial court correctly excluded that testimony. The State argues defendant did not establish his expert was qualified to provide an opinion about defendant's alcohol level or that Dr. Schenk's opinion was based on generally accepted principles. In addition, the State argues Schenk's testimony would not have assisted the jury. We agree.

Expert testimony is allowed where the individual has experience and qualifications which provide the expert with knowledge not commonly known to laypersons. (*Enis*, 139 Ill. 2d at 288, 564 N.E.2d at 1164; *People v. Jordan* (1984), 103 Ill. 2d 192, 208, 469 N.E.2d 569, 576.) The burden of establishing an expert's qualifications rests with the proponent. (*Jordan*, 103 Ill. 2d at 208, 469 N.E.2d at 576; *People v. Groth* (1982), 105 Ill. App. 3d 244, 246, 434 N.E.2d 65, 66.) Defendant likens Dr. Schenk's expertise to the expert in *Rock v. Pickleman* (1991), 214 Ill. App. 3d 368, 574 N.E.2d 682. In *Rock*, a medical malpractice action, the court ruled a nonsurgeon could testify as an expert about the proper standard of care for a surgeon when the nonsurgeon's testimony relied on a surgeon's view. The medical procedure at issue was not a surgery.

The State correctly argues Dr. Schenk's expertise in determining a persons' blood-alcohol level at a particular time in the past was suspect. His prior experience primarily addressed sources of error in breathalyzer equipment. Although Dr. Schenk was experienced in chemistry, defendant did not show what Dr. Schenk's knowledge was regarding metabolism or how alcohol is absorbed in humans.

Defendant correctly contends an individual may qualify as an expert based on experience alone. (*Duffy v. Midlothian Country Club* (1985), 135 Ill. App. 3d 429, 481 N.E.2d 1037.) According to defendant, Dr. Schenk's knowledge, skill, training and education established he was an expert in the field in which his testimony would be directed. He cites *Webster Manufacturing Co. v. Mulvanny* (1897), 168

Ill. 311, 48 N.E. 168, to show the low threshold required to permit even a layperson to testify about the percentage of alcohol in a specific beverage. This expert qualified due to his individual experience in consuming alcohol. Defendant argues this case supports his contention that Dr. Schenk was qualified to testify about issues related to the breathalyzer and its methodology. However, this was not the basis for Dr. Schenk's testimony during the offer of proof. Rather, he was to testify about defendant's blood-alcohol curve, not about the breathalyzer or its methodology.

Defendant fails to consider the added variables in his case as compared to *Duffy*. Dr. Schenk stated a person's height, weight, size, metabolism, *et cetera*, would affect a person's alcohol level. A lay expert testifying about the alcohol content of one particular beverage does not present such specialized variables as defendant's case. Defendant did not establish a foundation for admitting Dr. Schenk's testimony as that of an expert.

The expert must also rely on scientific theories which are generally accepted in the relevant field. (*Jordan*, 103 Ill. 2d at 208, 469 N.E.2d at 576.) Although Dr. Schenk testified the mathematical formulation which he used and which was developed in the 1930's was commonly used in the field, he had varied this formulation. Defendant did not provide evidence this variation was generally accepted. In addition, no testimony showed this mathematical computation was commonly recognized as reliable or accurate in the field. More importantly, defendant failed to show the variation of the mathematical computation as to *him* was scientifically reliable.

Expert testimony must also assist the trier of fact. (*Enis*, 139 Ill. 2d at 288, 564 N.E.2d at 1164; *Jordan*, 103 Ill. 2d at 208, 469 N.E.2d at 576.) The State correctly notes evidence of a defendant's refusal to submit to a test designed to determine whether he is under the influence of alcohol is admissible as circumstantial evidence. (*People v. Roberts* (1983), 115 Ill. App. 3d 384, 387-88, 450 N.E.2d 451, 453; *People v. Miller* (1983), 113 Ill. App. 3d 845, 847-48, 447 N.E.2d 1060, 1061.) This evidence was helpful to the trier of fact. The jury could have inferred defendant's actions during the observation period showed he refused the test because he knew it would have confirmed he was driving under the influence.

Dr. Schenk's testimony, on the other hand, would not have assisted the jury. Dr. Schenk would have testified defendant's blood-alcohol level was .057. However, he was not going to provide an evaluation about this blood-alcohol level. In addition, defendant was not going to request a jury instruction about the significance of a .057

blood-alcohol level. Absent additional explanation about the meaning of Dr. Schenk's opinion that defendant's blood-alcohol level on February 23 was .057, his testimony would not have helped the jury decide whether defendant was driving under the influence of alcohol. In addition, an alcohol level of .057 does not create any presumption or inference about whether defendant was under the influence of alcohol. Ill. Rev. Stat. 1989, ch. 95½, par. 11—501.2 (b)(2).

The trial judge did not abuse his discretion by refusing to allow Dr. Schenk to testify as an expert about defendant's blood-alcohol level the morning he was arrested for DUI. Defendant failed to establish a foundation for this testimony. In addition, the testimony lacked relevancy. We affirm the trial court.

Affirmed.

GREEN, P.J., and STEIGMANN, J., concur.